2023 IL App (1st) 210972

SECOND DIVISION
March 28, 2023

No. 1-21-0972

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| MOHAMMEDSAHIL KOTHAWALA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | Appeal from the |
| v. | ) | Circuit Court of |
| | ) | Cook County |
| WHOLE LEAF, LLC, d/b/a Whole Leaf Tobacco, and | ) | |
| LG CHEM, LTD., and HS WHOLESALE, LTD., | ) | |
| | ) | 19 L 10875 |
| Defendants, | ) | |
| | ) | Honorable |
| | ) | Patricia O'Brien Sheahan, |
| | ) | Judge Presiding |
| (LG Chem, Ltd., | ) | |
| | ) | |
| Defendant-Appellant). | ) | |

_____

JUSTICE ELLIS delivered the judgment of the court, with opinion.
Justices Howse and Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff, Mohammedsahil Kothawala, sued LG Chem, Ltd. (and others) after an e-cigarette—also known as a vape pen or vaping device—containing one of its batteries exploded in his pocket. LG Chem, a subsidiary of the well-known South Korean company, moved to dismiss the complaint, claiming that Illinois could not exercise personal jurisdiction over it.

¶ 2     Before ruling on the motion, the circuit court allowed plaintiff to take discovery for the purposes of establishing personal jurisdiction. That discovery showed that LG Chem had sold nearly 2 million "18650 battery cells"—the battery at issue—within Illinois during the relevant

period. Still, LG Chem contended that Illinois could not exercise jurisdiction because it did not avail itself to Illinois's *vape-pen* industry. The circuit court disagreed and found that LG Chem availed itself to the battery market in Illinois, and that this forum thus had specific jurisdiction over plaintiff's claims arising out of the same.

¶ 3    This case is one of many around the country alleging injury from the same batteries under more or less the same circumstances. See *LG Chem, Ltd. v. Superior Court of San Diego County*, 295 Cal. Rptr. 3d 661, 679 n.10 (Ct. App. 2022) (noting nearly 20 cases nationwide). We also recognize that courts have split on whether the individual forums can exercise personal jurisdiction over LG Chem.

¶ 4    We hold that Illinois may exercise personal jurisdiction over LG Chem. Between 2016 and 2018, the company sold nearly 2 million of these 18650 batteries into Illinois, including sales to a distributor who resold the battery packs. An 18650 battery ended up in plaintiff's vape-pen in Illinois, and that battery exploded and injured plaintiff in Illinois. From a jurisdictional viewpoint, LG Chem purposefully availed itself of the laws of Illinois by intentionally selling batteries within the state, and plaintiff's claims unquestionably relate to that business. While LG Chem claims it did not authorize the batteries' use in vape pens *per se*, we find that argument relevant to liability and not personal jurisdiction.

¶ 5                                    BACKGROUND

¶ 6    LG Chem manufactured small, cylindrical lithium-ion battery cells, "18650 batteries." (We use the past tense because the company created a new subsidiary, LG Energy Solutions, in 2020 to "spin-off" its battery division.) In September 2018, plaintiff's vape pen, which allegedly contained one of LG Chem's batteries, "exploded and/or caught fire" while in plaintiff's pocket.

To recover for the injury, plaintiff filed negligence and strict product liability claims against LG Chem and the companies involved in the manufacturing and sale of the vape pen.

¶ 7    LG Chem appeared and moved to dismiss for lack of personal jurisdiction, attacking both general and specific jurisdiction. LG Chem argued that plaintiff's claims did not arise out of its conduct in Illinois, nor did it purposefully avail itself of the vaping market within the forum. The motion was supported by the affidavit of Kyung Taek Oh. In his affidavit, Mr. Oh states that LG Chem is a South Korean corporation, headquartered in Seoul, and the company does not have a physical presence in Illinois and is not registered to conduct business within the state—effectively defeating general jurisdiction.

¶ 8    As to specific conduct, Oh swore: "LG Chem never designed, manufactured, distributed, advertised, or sold 18650 lithium-ion cells for sale to or use by individual consumers as standalone, removable batteries." Nor did it ever "distribute[,] advertise[,] or [sell] 18650 lithium-ion cells directly to consumers as standalone, removable batteries and never authorized any manufacturer, wholesaler, distributor, retailer, re-seller, or other individual entity to do so." He also stated that 18650 batteries were not designed or manufactured in Illinois, and that the company never conducted any business with the defendants involved with the vaping industry.

¶ 9    Mr. Oh testified in his deposition that he is a "Professional" involved in overseas sales at the newly formed LG Energy Solutions. Before the "spin-off" in 2020, he had the same job with LG Chem. At the relevant time, LG Chem manufactured and distributed 18650 lithium-ion cell batteries across the globe. LG Chem sold the batteries on a "business to business" model, meaning they were not meant for individual consumers but were sold to be incorporated into larger "battery packs," which were then used in "a wide variety of applications." He also stated

that LG Chem did not advertise the batteries but, because of its prominence within the industry, customers came to them.

¶ 10 Before LG Chem agreed to provide batteries, Oh claimed that each potential customer undergoes an internal review. While we do not have all the details of this process, essentially, LG Chem only works with companies that agree to use the batteries in an "approved" way. According to Oh, LG Chem would never work with a vape company because it was "forbidden."

¶ 11 As to Illinois, Oh was familiar with three companies that LG Chem had sold to: AllCell, Inventus, and B2B. Of these, he was only personally involved with Inventus. Inventus was a battery packer who used the LG Chem batteries in vacuums, but "there were other applications as well." While not personally familiar with AllCell, he believed they purchased the batteries to use in forklifts. Finally, B2B was a "distributer," not a battery packer. A distributor purchases the batteries from LG Chem and then resells them. Oh did not know to whom B2B distributed the batteries, nor does LG Chem track batteries after they are sold. In total, between 2016 and 2018, LG Chem sold approximately 2 million of these 18650 battery cells to companies in Illinois.

¶ 12 The circuit court denied LG Chem's motion to dismiss. The court concluded that it had specific jurisdiction: "Having established a market in Illinois, LG Chem's sale of the batteries sufficiently establishes a relationship among defendant LG Chem, the forum state, Illinois, and the claim at bar." We granted LG Chem leave to appeal pursuant to Illinois Supreme Court Rule 306(a)(3) (eff. Oct. 1, 2020).

¶ 13                                                    ANALYSIS

¶ 14 On appeal, LG Chem argues the trial court erred in concluding that it was subject to personal jurisdiction within Illinois. It is a plaintiff's burden to establish a *prima facie* basis for exercising jurisdiction over a defendant. *Rios v. Bayer Corp.*, 2020 IL 125020, ¶ 16. In finding

jurisdiction proper, the court did not hear evidence and relied exclusively on the parties' documentary filings. Thus, we review its decision *de novo*. *Id.*

¶ 15    Illinois's long-arm statute (735 ILCS 5/2-209 (West 2020)) allows an Illinois court to exercise jurisdiction over a nonresident. *Russell v. SNFA*, 2013 IL 113909, ¶ 29. When a party, such as plaintiff here, invokes subsection (c) (735 ILCS 5/2-209(c) (West 2020)), commonly referred to as the "catch-all provision," the sole question before us is whether the nonresident's contact with Illinois is sufficient to satisfy federal and Illinois due process. *Russell*, 2013 IL 113909, ¶ 30. LG Chem does not contend that Illinois's due process clause provides greater restraint against the exercise of jurisdiction; we thus consider only federal principles. See *Rios*, 2020 IL 125020, ¶ 17; *Aspen American Insurance Co. v. Interstate Warehousing, Inc.*, 2017 IL 121281, ¶ 13; *Russell*, 2013 IL 113909, ¶ 33.

¶ 16    The fourteenth amendment's due process clause limits a state court's authority to exercise jurisdiction over out-of-state defendants. *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. ___, ___, 141 S. Ct. 1017, 1024 (2021). The rules on jurisdiction stem from two sets of values—"treating defendants fairly and protecting 'interstate federalism.' " *Id.* at ___, 141 S. Ct. at 1025 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980)). Initially, the focus was on the reciprocity between states and business; when a company enjoys the privilege of conducting business within a state, the state naturally gains the authority to hold those companies accountable for misconduct. *Id.* at ___, 141 S. Ct. at 1025. The court has added that the rules on specific jurisdiction also serve to "provide[ ] defendants with 'fair warning'— knowledge that 'a particular activity may subject [it] to the jurisdiction of a foreign sovereign.' " *Id.* at ___, 141 S. Ct. at 1025 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). At the same time, courts are cautious to expand jurisdiction too much, to avoid states

competing over who has jurisdiction. *Id.* at \_\_\_, 141 S. Ct. at 1025 (citing *World-Wide Volkswagen*, 444 U.S. at 293). Thus, we "seek[ ] to ensure that States with 'little legitimate interest' in a suit do not encroach on States more affected by the controversy." *Id.* at \_\_\_, 141 S. Ct. at 1025 (quoting *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 582 U.S. \_\_\_, \_\_\_, 137 S. Ct. 1773, 1780 (2017)).

¶ 17   Since *International Shoe*, the question of jurisdiction has revolved around the "nature and extent of 'the defendant's relationship to the forum State.' " *Id.* at \_\_\_, 141 S. Ct. at 1024 (quoting *Bristol-Myers*, 582 U.S. at \_\_\_, 137 S. Ct. at 1779). This focus led to recognizing two kinds of personal jurisdiction: general and specific. *Id.* at \_\_\_, 141 S. Ct. at 1024. For both, Illinois law substantially mirrors federal law. See *Russell*, 2013 IL 113909, ¶ 32.

¶ 18   General jurisdiction is "all-purpose" and allows the defendant to be sued for any claim, regardless of where the conduct took place, because the defendant is essentially "at home" in the forum state. *Ford Motor*, 592 U.S. at \_\_\_, 141 S. Ct. at 1024; *Aspen*, 2017 IL 121281, ¶ 14.

¶ 19   Specific jurisdiction, sometimes known as "case-linked" jurisdiction, is more precise in scope and can be exerted over a defendant only in a particular case. *Ford Motor*, 592 U.S. at \_\_\_, 141 S. Ct. at 1024. We look to whether " 'the defendant has purposefully directed [its] activities at residents of the forum' and if 'the litigation results from alleged injuries that arise out of or relate to those activities.' " *Rios*, 2020 IL 125020, ¶ 20 (quoting *Burger King*, 471 U.S. at 472).

¶ 20   As the circuit court noted, plaintiff has never asserted that LG Chem was subject to general jurisdiction. The arguments on appeal revolve solely around specific jurisdiction.

¶ 21                                                              I

¶ 22   In analyzing specific jurisdiction, courts undertake a multistep analysis. First, we look to whether the defendant purposefully availed itself of the jurisdiction. *Ford Motor*, 592 U.S. at

___, 141 S. Ct. at 1024 (citing *Burger King*, 471 U.S. at 475). That is, the defendant "must take 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.' " *Id.* at ___, 141 S. Ct. at 1024 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). If the plaintiff cannot satisfy even this minimal threshold, then the analysis ends—the court lacks personal jurisdiction over the defendant.

¶ 23     If, however, the plaintiff establishes the defendant's purposeful availment of the forum, plaintiff must then establish that the plaintiff's claims " ' "arise out of or relate to the defendant's contacts" ' with the forum." *Id.* at ___, 141 S. Ct. at 1025 (quoting *Bristol-Myers*, 582 U.S. at ___, 137 S. Ct. at 1780, quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). For some time, this phrase—"arise out of or relate to the defendant's contacts"—was not clarified by the Supreme Court. See *Russell*, 2013 IL 113909, ¶ 83. It was not clear, among other things, whether this phrase was asking one question or two different questions in the disjunctive.

¶ 24     That issue was recently resolved in *Ford Motor*, 592 U.S. ___, 141 S. Ct. 1017. There, Ford Motor Company argued that jurisdiction could attach " 'only if the defendant's forum conduct *gave rise* to the plaintiff's claims.' " (Emphasis in original.) *Id.* at ___, 141 S. Ct. at 1026. The Court rejected this argument, emphasizing that the phrase "arise out of or relate to the defendant's contacts" contains two distinct and independent phrases. (Emphasis and internal quotation marks omitted.) *Id.* at ___, 141 S. Ct. at 1026. The Court explained:

> "The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing. That does not mean anything goes. In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum. But again, we have never framed the specific jurisdiction inquiry as

always requiring proof of causation—*i.e.*, proof that the plaintiff 's claim came about because of the defendant's in-state conduct." *Id.* at ___, 141 S. Ct. at 1026.

¶ 25    Thanks to *Ford*, we now know that this second step in the specific-jurisdiction analysis involves two distinct tests, either one of which plaintiff must satisfy to establish personal jurisdiction: (1) that the plaintiff's claims arise out of the defendant's contacts with the forum, or (2) that the plaintiff's claims relate to defendant's contacts with the forum. These questions become relevant if and only if the plaintiff first establishes purposeful availment.

¶ 26                                    II

¶ 27    We begin with the first step in the specific-jurisdiction analysis, the more general question of whether LG Chem purposefully availed itself of the benefits of doing business within Illinois. LG Chem argues that it did not, because it did not avail itself in any way of the consumer battery market in Illinois—it never intended its 18650 batteries to be sold individually to consumers like plaintiff. LG Chem emphasizes that its contact with the state must be by "choice and not 'random, isolated, or fortuitous.' " *Id.* at ___, 141 S. Ct. at 1025 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). Because its 18650 battery ended up in plaintiff's vape pen by unforeseeable happenstance, says LG Chem, plaintiff cannot establish LG Chem's purposeful availment of the benefit of doing business in Illinois.

¶ 28    But this view is too narrow for the purposeful-availment inquiry. To purposely avail itself of the benefits of a forum, a defendant "must take '*some act* by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.' " (Emphasis added.) *Id.* at ___, 141 S. Ct. at 1024 (quoting *Hanson*, 357 U.S. at 253). "Some act" means just that—some act, not an act that necessarily has any direct or indirect connection to the lawsuit at hand. See

*Yamashita v. LG Chem, Ltd.*, No. 20-17512, 2023 WL 2374776, at *5 (9th Cir. Mar. 6, 2023) ("for purposeful availment purposes, a single sufficiently deliberate contact can suffice").

¶ 29    Said differently, to satisfy purposeful availment, plaintiff here need only show that LG Chem " 'purposefully directed [its] activities at residents of the forum.' " *Rios*, 2020 IL 125020, ¶ 20 (quoting *Burger King*, 471 U.S. at 472). Again, these "activities" need not be causally or even indirectly related to the claims plaintiff raises in the lawsuit; that deeper dive into the facts of the lawsuit occurs in the second prong regarding causation or relatedness. See *Superior Court of San Diego County*, 295 Cal. Rptr. 3d at 674 (rejecting same argument by LG Chem, noting that LG Chem was "conflat[ing] the concepts of purposeful availment and relatedness"); *Bristol-Myers*, 582 U.S. ___, 137 S. Ct. at 1781 (in analyzing *second prong* issues of causation or relatedness, "activity of some sorts within a state … is not enough" (internal quotation marks omitted)).

¶ 30    As the Supreme Court has put it,

> "where the defendant deliberately has engaged in significant activities within a State, [citation], or has created continuing obligations between himself and residents of the forum, [citation], he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." (Internal quotation marks omitted.) *Burger King*, 471 U.S. at 475-76.

¶ 31    That description applies to LG Chem here in full force. LG Chem has clearly established commercial relationships in Illinois and availed itself of the privileges of doing business here. At

the purposeful-availment stage, the law is unconcerned with a causal or even indirect relationship between the facts of this suit and the specifics of LG Chem's in-state activity.

¶ 32    For example, in a case just like ours involving an 18650 battery exploding within an e-cigarette device, a federal court in Ohio found LG Chem's purposeful availment based on its activities in Ohio that had no connection whatsoever to those batteries, including the sale of different batteries for use in energy storage facilities in two towns in Ohio and hundreds of shipments of petrochemical products into Ohio. *Straight v. LG Chem, Ltd.*, No. 2:20-cv-6551, 2022 WL 16836722, at *3 (S.D. Ohio Nov. 9, 2022). Likewise, the Ninth Circuit found that LG Chem purposely availed itself of Hawaii's laws when it shipped various materials (but not 18650 batteries) through the port of Honolulu and through its involvement in the sale of residential solar batteries (entirely unrelated to 18650 batteries) in Hawaii. *Yamashita*, 2023 WL 2374776, at *5; see *Superior Court of San Diego County*, 295 Cal. Rptr. 3d at 673 (having "little difficulty" finding LG Chem's purposeful availment in California based on sale of batteries to three manufacturers of electric vehicles).

¶ 33    The long and short is that plaintiff need only show that LG Chem has directed some commercial activity at Illinois. It is undisputed that LG Chem has done so; it has sold millions of batteries to companies in Illinois. Plaintiff has thus satisfied the purposeful-availment prong.

¶ 34    The case law cited by LG Chem does not change our conclusion. LG Chem relies on *Ford Motor* to argue that it did not "serve a market for standalone, removeable consumer batteries in Illinois—or anywhere else in the world." As clearly distinguishable as the facts in *Ford Motor* are from ours, LG Chem's reliance on *Ford Motor* is misplaced for an even more fundamental reason: *Ford Motor* was not a case about purposeful availment. See *Superior Court of San Diego County*, 295 Cal. Rptr. 3d at 673 ("*Ford Motor* is a relatedness case, not a

purposeful availment case"). In fact, Ford conceded that it had purposefully availed itself of the forums at issue there, Minnesota and Montana. *Ford Motor*, 592 U.S. at ___, 141 S. Ct. at 1028.

¶ 35 Nor are we persuaded by the decision of a federal court here in Illinois in a case with the same basic facts as ours, likewise involving an LG Chem subsidiary, that found a lack of purposeful availment. In *Richter v. LG Chem, Ltd.*, No. 18-CV-50360, 2020 WL 5878017, *2 (N.D. Ill. Oct. 2, 2020), the court recognized that LG Chem sold its 18650 batteries "directly to two manufacturing companies in Illinois—[AllCell] and [Inventus]"—two of the three at issue here. That should have been the beginning and end of the discussion for purposeful availment; LG Chem had directed some commercial activity at the state of Illinois and thus had purposefully availed itself of the benefits of the forum. See *Ford Motor*, 592 U.S. at ___, 141 S. Ct. at 1024; *Burger King*, 471 U.S. at 472; *Rios*, 2020 IL 125020, ¶ 20.

¶ 36 The district court there, however, found it meaningful that there was "no evidence linking the products sold to [AllCell and Inventus] to Midwest Goods or No Leaf Vapor," the vaping stores at issue, nor any "evidence suggesting that LG Chem did anything to target Illinois consumers." *Richter*, 2020 WL 5878017, at *2, *4. For purposeful availment, it was not necessary to find any relationship or evidence of that kind. The district court conflated purposeful availment with the deeper-dive, case-specific analysis in the second prong of specific jurisdiction—causation or relatedness between the defendant's in-forum activities and the facts of the lawsuit. We decline to follow *Richter*.

¶ 37 And we note, as well, that a very recent decision from another federal court in Illinois, considering the same factual setting and LG Chem, rejected the reasoning in *Richter* just as we do, noting that "[c]ourts do not require such specific connections to establish purposeful availment when a defendant places the products at issue directly into the forum state."

*Eckelberger v. LG Chem, Ltd.*, No. 21-CV-906-NJR, 2023 WL 1928454, at *4 (S.D. Ill. Feb. 10, 2023).

¶ 38    Because it is undisputed that LG Chem has directly sold nearly 2 million 18650 batteries into Illinois in the relevant time period, we have no hesitation in finding that LG Chem purposefully availed itself of the benefits of doing business in Illinois.

¶ 39                                    III

¶ 40    That brings us to the second prong of the specific-jurisdiction analysis. As noted above, it breaks down, itself, into two separate questions—whether this lawsuit "arises out of" LG Chem's contacts with the forum or whether this lawsuit is "related to" defendant's in-forum activities. See *Ford Motor*, 592 U.S. ___, 141 S. Ct. at 1025.

¶ 41    LG Chem's argument on this prong substantially mirrors its availment one:

"LG Chem's sales of 18650 cells—industrial component products—to sophisticated customers in Illinois does not subject LG Chem to personal jurisdiction in this case. That is because those sales did not have 'anything to do with the injury' Plaintiff sustained from using an 18650 lithium-ion cell as a standalone, removable consumer battery to power his vaping device."

¶ 42    That argument closely tracks the "causation-only" standard that the Supreme Court rejected in *Ford Motor* (*id.* at ___, 141 S. Ct. at 1026), because it only addresses the "arises out of" portion of the rule and ignores the separate "relates to" portion. As the Court explained, even if a plaintiff cannot show that his claim "came about *because of* the defendant's in-state conduct," the relatedness requirement "contemplates that some relationships will support jurisdiction without a causal showing." (Emphasis added.) *Id.* at ___, 141 S. Ct. at 1026. As the court cautioned, "[t]hat does not mean anything goes. *** [T]he phrase 'relate to' incorporates

- 12 -

real limits, as it must to adequately protect defendants foreign to a forum." *Id.* at ___, 141 S. Ct. at 1026.

¶ 43    So if, as may be true here, there is no direct linear relationship between the sale of the battery into Illinois and how and where that battery allegedly malfunctioned in Illinois, we must consider whether the " 'relationship among the defendant, the forum[s], and the litigation is close enough to support specific jurisdiction." *Id.* at ___, 141 S. Ct. at 1032 (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). The Court in *Ford Motor* considered the paradigm example of specific jurisdiction to be "when a company like Ford serves a market for a product in the forum State and the product malfunctions there." *Id.* at ___, 141 S. Ct. at 1027. That, says plaintiff, perfectly describes this case—LG Chem sold these batteries into Illinois, and the product malfunctioned in Illinois.

¶ 44    That same basic argument plaintiff makes here has carried the day in some but not all exploding-vape-pen cases considering this same question of relatedness. We could fill a small novel with the decisions that have already come down and continue to come down regularly. We would note, first, that some decisions have found relatedness even though LG Chem's only business in the forum state involved sales of its 18650 batteries for specific inclusion in various products—that is, *not* to distributors for resale.

¶ 45    For example, a federal court in Michigan found relatedness on the mere fact that LG Chem shipped its 18650 batteries into Michigan for inclusion into vacuum cleaners and automotive products, as well as once to one of LG Chem's subsidiaries. *Sullivan v. LG Chem, Ltd.*, 585 F. Supp. 3d 992, 1003 (E.D. Mich. 2022). As the court put it, "this cause of action 'relates to' LG Chem's contacts with Michigan because LG Chem served a market for the *very*

*product* that the plaintiff alleges malfunctioned and injured him here, thus creating the necessary relationship between the forum, the defendant, and the litigation." (Emphasis added.) *Id.* at 1005.

¶ 46 A federal court in South Dakota reached the same conclusion, finding that it sufficed under the relatedness test that LG Chem sold 18650 batteries into the state for use in specific applications by industrial customers. *Tieszen v. EBay, Inc.*, No. 4:21-CV-04002-KES, 2021 WL 4134352, at *5 (D.S.D. Sept. 10, 2021). The court reasoned that "[plaintiff's] claim and LG Chem's contact with South Dakota both revolve around the 18650 lithium-ion battery." *Id.*

¶ 47 Other courts have found a lack of relatedness when LG Chem's activities in the forum state did not involve these 18650 batteries. For example, in *Straight*, 2022 WL 16836722, at *6, though the fact that LG Chem had conducted other business in Ohio, unrelated to 18650 batteries, was enough to satisfy purposeful availment, it did not satisfy the "relatedness" requirement, as the undisputed evidence showed that LG Chem "did not sell or distribute 18650 cells to Ohio, even for industrial use."

¶ 48 Likewise, the Ninth Circuit found a lack of relatedness between the battery exploding in an e-cigarette and LG Chem's shipments into Hawaii of raw materials or batteries for stationary solar-power systems, noting that "the large batteries installed in stationary solar-power systems and the small portable stand-alone [18650] battery at issue here are as different as sedans and 18-wheelers." *Yamashita*, 2023 WL 2374776, at *7.

¶ 49 And even the sale of those very 18650 batteries, if only for inclusion into specific products in the forum state, was not enough for some courts to find relatedness. In *Superior Court of San Diego County*, 295 Cal. Rptr. 3d at 677, the fact that LG Chem sold 18650 batteries *not* for standalone resale as battery packs but *only* for specific inclusion into electric vehicles was not enough to find relatedness.

¶ 50    Here, however, we need not decide if it would suffice for relatedness purposes, by itself, that LG Chem sold 18650 batteries to industrial customers in Illinois for specified purposes such as vacuums (Inventus) or forklifts (AllCell). LG Chem admits that it also sold the 18650 battery packs to an Illinois distributor, B2B, for *resale*—resale to whom or for what purpose, LG Chem does not know. And that is a significant point of distinction: as best we can tell, LG Chem does not sell these battery packs to distributors for resale in many states; one court noted LG Chem's representation that Illinois was one of only two such states. See *Straight*, 2022 WL 16836722, at *2 (noting that "LG Chem sold its 18650 cells to two distributors in the United States—one in Illinois and one in Texas").

¶ 51    Regardless of how we might otherwise rule absent this fact, that direct shipment of battery packs to a distributor for resale is a significant difference that favors a finding of specific jurisdiction here.

¶ 52    We understand that LG Chem insists that it never intended for its 18650 battery packs to be resold for *consumer* purposes, much less for vaping devices, and that it put warning labels on the product to prevent that very thing. We also understand that, at this preliminary stage, we cannot know if the battery that exploded in plaintiff's vape pen came from a resale from B2B or whether it came from out of state.

¶ 53    All those issues will be highly relevant—but relevant to LG Chem's liability, not specific jurisdiction. See, *e.g.*, *Williams v. Brown Manufacturing Co.*, 45 Ill. 2d 418, 425-26 (1970) (misuse is defense to strict products liability in Illinois); *Eckelberger*, 2023 WL 1928454, at *6 (questions of foreseeability relevant to liability, not personal jurisdiction); *LG Chem, Ltd. v. Lemmerman*, 863 S.E.2d 514, 524 (Ga. Ct. App. 2021) (LG Chem's argument about misuse of its 18650 batteries goes to liability, not jurisdiction); *Dilworth v. LG Chem, Ltd.*, No. 2021-CA-

00629-SCT, 2022 WL 7274532, at *5 (Miss. Oct. 13, 2022) (same); *LG Chem America, Inc. v. Morgan*, No. 01-19-00665-CV, 2020 WL 7349483, at *10 (Tex. App. Dec. 15, 2020) (same); *Tieszen*, 2021 WL 4134352, *6 (same).

¶ 54    In the end, we are left with these facts: (1) LG Chem sold millions of the 18650 battery to businesses in Illinois, including to a distributor for resale; (2) one of its batteries found its way into plaintiff's vape pen, which was purchased in Illinois; and (3) plaintiff is an Illinois resident who used the vape pen in Illinois and was injured when the vape pen exploded in Illinois. Under these circumstances, and given that a finding of relatedness requires something short of but-for causation under *Ford*, it is difficult to see how anyone could plausibly argue that plaintiff's claims are *not* at least "related to" LG Chem's activities in this state.

¶ 55    We return again to the recent decision from a federal court in Illinois, under facts nearly identical to ours, that found that LG Chem's actions within the state related to the claims brought there by the plaintiff, Eckelberger:

> "LGCAI shipped thousands of 18650 cells to Illinois. LGCAI's contacts with Illinois 'relate to' Eckelberger's claims because LGCAI's contacts with Illinois involve sales of the very lithium-ion battery that allegedly led to Eckelberger's injury. Further, Eckelberger is a citizen of Illinois, and the battery allegedly malfunctioned in Illinois. LGCAI's contacts with Illinois are related to Eckelberger's claims and support specific personal jurisdiction." *Eckelberger*, 2023 WL 1928454, at *7.

We concur entirely with that court's assessment.

¶ 56    LG Chem cites *Bristol-Myers*, 582 U.S. at ___, 137 S. Ct. at 1778, where plaintiffs from around the country joined a class-action lawsuit in California alleging the prescription drug Plavix injured them. The class consisted of 86 Californians and 592 additional members from

other states. *Id.* at ___, 137 S. Ct. at 1778. While Bristol-Myers sold nearly 200 million pills of Plavix in California over the relevant 6-year period, "[t]he nonresident plaintiffs did not allege that they obtained Plavix through California physicians or from any other California source; nor did they claim that they were injured by Plavix or were treated for their injuries in California." *Id.* at ___, 137 S. Ct. at 1778.

¶ 57    Bristol-Myers moved to dismiss only the *nonresidents'* claims for lack of jurisdiction. *Id.* at ___, 137 S. Ct. at 1778. The majority of the Supreme Court concluded that there was insufficient connection between the *nonresidents'* claims and California despite the company's extensive activity within the state. *Id.* at ___, 137 S. Ct. at 1781. In reaching this conclusion, the majority emphasized that

>  "the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California. The mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims. *** What is needed—and what is missing here—is a connection between the forum and the specific claims at issue." *Id.* at ___, 137 S. Ct. at 1781.

¶ 58    In following *Bristol-Myers*, our supreme court recognized that the critical import of that decision limits *nonresidents* from claiming specific jurisdiction in forums where none of the conduct relevant to them occurred. *Rios*, 2020 IL 125020, ¶ 28. In essence, the United States Supreme Court later noted, the decision was necessary to limit forum shopping. *Ford Motor*, 592 U.S. at ___, 141 S. Ct. at 1031. But concern for forum shopping does not exist when, as here, residents of the forum state bring the claim. See *id.* at ___, 141 S. Ct. at 1031 ("Yes, Ford sold

the specific products in other States, as Bristol-Myers Squibb had. But here, the plaintiffs are residents of the forum States. They used the allegedly defective products in the forum States. And they suffered injuries when those products malfunctioned in the forum States.").

¶ 59    We agree with another court considering these very facts of an exploding e-cigarette from an LG Chem 18650 battery:

> "In contrast to *Bristol-Myers Squibb*, in the present case, the individual injured by the product *** is a resident of the forum, purchased the product in the forum, used the product in the forum, and was injured by the product in the forum. Thus, the present case has the exact type of connections between the claims and the forum that were missing in *Bristol-Myers Squibb*." *Berven v. LG Chem, Ltd.*, No. 1:18-CV-01542-DAD-EPG, 2019 WL 1746083, at *12 (E.D. Cal. Apr. 18, 2019).

We find *Bristol-Myers* inapplicable here.

¶ 60    For these reasons, plaintiff has satisfied the relatedness test for specific personal jurisdiction.

¶ 61                                          IV

¶ 62    Finally, we must consider the reasonableness of requiring LG Chem to litigate in Illinois. In determining whether the exercise of jurisdiction offends traditional notions of fair play and justice, we typically consider (1) the burden on the defendant; (2) the interest of Illinois in resolving the dispute; (3) the plaintiff's interest in obtaining relief; and (4) the interests of other affected forums in the efficient resolution of the dispute. See *Russell*, 2013 IL 113909, ¶ 87.

¶ 63    LG Chem has not pressed this point on appeal and arguably forfeited it. Regardless, we have no reservation in finding that it is reasonable to require LG Chem to litigate in this forum. LG Chem has made extensive sales of its 18650 battery into Illinois, presumably reaping

considerable profits. It cannot come as a surprise that litigation might follow in this forum, even if the particularities of how its product was used might be unforeseen. Our state unquestionably has an interest in an Illinois resident suffering an injury in Illinois from a product purchased in Illinois. Plaintiff, as well, has an unquestioned interest in seeking redress.

¶ 64     Nor is it lost on us that LG Chem's position, taken to its end, would result in no state in the country ever exercising personal jurisdiction in any of these matters. This, we are told, is the very position taken by LG Chem recently before the Mississippi Supreme Court. See *Dilworth*, 2022 WL 7274532, at *6 ("LG Chem's position is that no state is an appropriate forum, and that the suit should be brought in South Korea, if anywhere.").

¶ 65     We do not find that exercising jurisdiction over LG Chem under the facts of this case would undermine notions of fair play and substantial justice.

¶ 66                              CONCLUSION

¶ 67     The judgment of the circuit court is affirmed.

¶ 68     Affirmed.

*Kothawala v. LG Chem, Ltd.*, 2023 IL App (1st) 210972

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-L-10875; the Hon. Patricia O'Brien Sheahan, Judge, presiding. |
| **Attorneys for Appellant:** | Timothy J. Young, Jacob D. Sawyer, and Jordan W. LaClair, of Lewis Brisbois Bisgaard & Smith LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Michael Resis, of SmithAmundsen LLC, Harry N. Arger, and Anda Tatoiu, of Dykema Gossett PLLC, and Alexander Gerteis, of Kryder Law Group, LLC, all of Chicago, and Thomas P. Scherschel and Kaylea H. Weiler, of SmithAmundsen LLC, of St. Charles, for appellees. |