2025 IL App (1st) 232289-U

SECOND DIVISION
February 11, 2025

No. 1-23-2289

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| A & A INVESTMENT, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | 21 L 6161 |
| | ) | |
| A.S.A.P. LOGISTICS, LTD., | ) | Honorable |
| | ) | John J. Curry, |
| Defendant-Appellant. | ) | Judge Presiding |

_____

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Van Tine and Justice McBride concurred in the judgment.

**ORDER**

¶ 1    *Held*: Affirmed. Court had personal jurisdiction over defendant.

¶ 2    Defendant A.S.A.P Logistics, Ltd. ("ASAP") appeals an adverse judgment on an action for breach of a promissory note, claiming the court lacked personal jurisdiction over ASAP, a nonresident. The transaction here easily fit within our state's long-arm statute, and invoking personal jurisdiction did not offend due process. We affirm.

¶ 3                              BACKGROUND

¶ 4    This case involves three companies and a relatively straightforward business transaction. Start with the parties to this action. ASAP is a New York company involved in importing and exporting. A&A Investments, Inc ("AA") is an Arkansas company, owned by a Dr. Amir

Querishi, that principally provides financing (loans) to other businesses Querishi owns. The third (non-party) company is Dr. Q Medical Supply LLC (DRQ), also owned by (and apparently named after) Dr. Querishi, a Texas company that owns and operates a medical supply and distribution warehouse in Batavia, Illinois. At trial, the business manager for both AA and DRQ described them as "sister companies."

¶ 5    In December 2020, during the throes of the pandemic, ASAP contracted to provide DRQ with 10,000 cartons of nitrile gloves. Under this Purchase and Sales Agreement ("Agreement"), ASAP would import and deliver the gloves to "Airport Chicago Airport USA" and then transport them to DRQ's Batavia warehouse. In exchange, DRQ agreed to pay $1.1 million. ASAP was obligated to transport these gloves from the Chicago airport within "12-14 days after Advance payment" from DRQ.

¶ 6    That "advance payment" was a down payment of $330,000 that DRQ was required to make to ASAP. Paragraph 3 of the Agreement specifically contemplated that ASAP would secure the down payment "by issuing a promissory note."

¶ 7    The promissory note was written to AA and referenced DRQ as the "contracting party." In the promissory note, ASAP made the following commitment to AA:

> "We abide by Demand Promissory Note for **USD 3,30,000** [*sic*] (United States Dollar Three Hundred & thirty [*sic*] Thousand Only) signed by me/us which is given to you as security for advance payment you have made against purchase of Nitrile Gloves qty 10000 cartons as per the purchase order given by you.
>
> Incase [*sic*] my firm fails to deliver the stock within 21 days after receipt of advance payment this promissory note may be exercised."

¶ 8     Pursuant to the promissory note, which we will shorthand to "the Note" for ease, AA paid ASAP the advance payment for the gloves. (There is some indication in the record that AA did not pay the full $330,000, but nobody has made that an issue here, and it makes no difference to our resolution.) Despite the advance payment, ASAP failed to deliver the gloves. AA, pursuant to the Note, demanded repayment. In February 2021, ASAP repaid some of the balance, $200,000. In April, AA sent a demand letter seeking the remaining outstanding balance.

¶ 9     In June 2021, AA filed suit in the circuit court of Cook County to recover the outstanding balance of the Note. After motion practice and issues concerning service of process, ASAP appeared and moved to dismiss for lack of personal jurisdiction, claiming that service was invalid and that jurisdiction violated due process. The court allowed AA to amend its complaint to add additional allegations linking the transaction to Illinois. ASAP again sought dismissal for lack of personal jurisdiction, but the court denied the motion.

¶ 10    Then the court held a bench trial. Only two witnesses testified: Dr. Qureshi, the owner of both DRQ and AA, and Masroor Shamsi, AA's and DRQ's business manager. These witnesses testified about the circumstances surrounding the transaction and made clear that the Note was inherently part and parcel of the Agreement between DRQ and ASAP.

¶ 11    Shamsi lives in Naperville, Illinois and works out of the DRQ facility in Batavia, Illinois. Shamsi negotiated both the sales contract and the Note with ASAP. ASAP principally drafted the sales agreement and Note, but Shamsi testified that there were negotiations: "I think it was a mutual—We both were going back and forth draft [*sic*], and then we finalized it." Shamsi flew from O'Hare Airport to Jamaica, New York to meet with ASAP and sign the final documents. When ASAP failed to deliver the nitrile gloves as promised, Shamsi repeatedly attempted communications with ASAP via email and phone from his office in Batavia, Illinois.

¶ 12    On the merits, ASAP provided no defense and called no witnesses. One argument ASAP raised, not otherwise relevant here, was that the promissory note did not meet the requirements for such notes under the Illinois Uniform Commercial Code, thus invoking Illinois law as the substantive law governing this transaction. Its other argument was its continuing challenge to personal jurisdiction.

¶ 13    The court entered judgment against ASAP in the amount of $130,000. Regarding personal jurisdiction, the court ruled:

> "The evidence is clear that the plaintiff's business manager conducts his business in the State of Illinois on behalf of the plaintiff and that the plaintiff uses a warehouse in Batavia, Illinois for the conduct of its business.
>
> In addition, the sales agreement established by the parties in New York in December of 2020 called for the delivery of the subject gloves to the plaintiff's warehouse in Batavia.
>
> Based on those facts, there are sufficient contacts for this State to have exercised long-arm jurisdiction over the defendant. There has been no violation of the defendant's due process rights. And the claim that it is inappropriate to enter a judgment against this out-of-state defendant under the facts and circumstances of this case is without merit."

¶ 14    ASAP timely appealed. As AA failed to file a response brief, we took the case on appellant's brief only and review it consistent with the principles set forth in *First Capitol Mortgage Corporation v. Talandis Construction Corporation*, 63 Ill. 2d 128 (1976).

¶ 15                              ANALYSIS

¶ 16    The United States and Illinois Constitutions, as well as Illinois state law, limit a state court's authority to exercise jurisdiction over out-of-state defendants. *Kothawala v. Whole Leaf,*

*LLC*, 2023 IL App (1st) 210972, ¶ 16. Typically, when a nonresident challenges jurisdiction, the analysis proceeds by first determining whether state law permits an Illinois court to exercise jurisdiction over that nonresident and, if so, whether the exercise of personal jurisdiction offends due process. *Russell v. SNFA*, 2013 IL 113909, ¶ 29; see 735 ILCS 5/2-209 (West 2022). Given the breadth of the Illinois long-arm statute permitting the exercise of personal jurisdiction, the analysis often collapses into only the question of due process. *Russell*, 2013 IL 113909, ¶ 30. Here, however, ASAP's principal argument—arguably its only developed argument—is that the transaction at issue here does not fall within the Illinois long-arm statute.

¶ 17 Whether the complaint on its face, plus any supporting documentation proffered by the parties, properly invokes personal jurisdiction is a question of law we review *de novo*. *Aspen American Insurance Co. v. Interstate Warehousing, Inc.*, 2017 IL 121281, ¶ 12. The court made both a pretrial ruling on the question and a jurisdictional ruling as part of its final judgment, as ASAP challenged it at trial. But our review remains *de novo*, as ASAP does not challenge any of the facts underlying the court's reasoning; the facts here are straightforward but, more to the point, undisputed. See *Sabados v. Planned Parenthood of Greater Indiana*, 378 Ill. App. 3d 243, 246 (2007) (question of personal jurisdiction reviewed *de novo* if there is no material dispute of fact, and only application of law to facts remains); *Alderson v. Southern Co.*, 321 Ill. App. 3d 832, 846 (2001) (same).

¶ 18 In rather cursory fashion without citation to any controlling case law, ASAP claims that the enforcement of a promissory note is "a cause of action not listed anywhere within the Illinois long arm statute conferring jurisdiction on out of state defendants." ASAP quotes but avoids detailed discussion of the long-arm statute, most notably subsection (a)(7), which allows a court to exercise personal jurisdiction over a nonresident if the alleged act involves "[t]he making or

performance of any *contract or promise* substantially connected with this State." (Emphasis added.) 735 ILCS 5/2-209(a)(7) (West 2022).

¶ 19    If a promissory note is not a "promise," then it needs a new name. See *Deutsche Bank National Trust Co. for Long Beach Mortgage Loan Trust 2006-9 v. Schoenberg*, 2018 IL App (1st) 160871, ¶ 27 ("A promissory note is an unconditional promise to pay a fixed amount of money and is payable to bearer or to order at the time it is issued or first comes into possession of a holder.").

¶ 20    Nor has ASAP cited any decision for the proposition that a promissory note is not a "contract." The notion seems so obvious that it has eluded discussion in our decisions, other than mentioning it in passing. See, *e.g.*, *PENSCO Trust Co. v. Urbanczyk*, 2023 IL App (1st) 220488-U, ¶ 55 ("while a promissory note is a contract, once the validity of the note is established, as it was in this case, the burden shifts to the debtor to show payment.").

¶ 21    In other cases, claims of breach of a promissory note were analyzed under traditional breach-of-contract principles without any further comment or were otherwise treated as equivalent. See, *e.g.*, *Monarch Hospice & Palliative Care, Inc. v. Ybarra*, 2021 IL App (1st) 200536-U, ¶ 56 ("plaintiffs argue that they were prejudiced and surprised by the breach of contract claim because it required them to defend against different claims. We again disagree and conclude there was no prejudice or surprise because the breach of contract claim alleged the same failure to pay as set forth in the [count alleging breach of] promissory note."); *Asset Exchange II, LLC v. First Choice Bank*, 2011 IL App (1st) 103718, ¶ 39 (holding that "there was no breach of contract since the Bank complied with the terms of the Note.").

¶ 22    We note as well that Illinois law adheres to " 'the long-standing principle that instruments executed at the same time, by the same parties, for the same purpose, and in the course of the

same transaction are regarded as one contract and will be construed together.' " *Id.* (quoting *Gallagher v. Lenart*, 226 Ill. 2d 208, 233 (2007)). That is not *quite* our situation here; technically, the contract for delivery of gloves was between ASAP and DRQ, one of Querishi's companies, while the Note was between ASAP and AA, a different Querishi-owned company.

¶ 23    But it would be silly to deny their interrelationship; the documents literally cross-referenced one another. The sales contract with DRQ provided that ASAP would execute a promissory note to secure the down payment for the nitrile gloves. The Note between AA and ASAP provided that ASAP would deliver the gloves to DRQ and would be liable on the Note if it did not. The long and short is that, in determining whether ASAP breached its obligation under this Note, it would be impossible to avoid construing these two documents together.

¶ 24    In any event, we are generally aware that promissory notes come in various shapes and sizes depending on the underlying commercial transaction, and perhaps there might be situations in which a promissory note lacks all the required elements of a "contract." Given the complete lack of discussion in ASAP's brief, this is not the place for a small treatise on that topic. Suffice it to say that, even if it were possible to view this Note as something other than a "contract"— and ASAP has given us no reason to do so—it is unquestionably a "promise." Indeed, we can only assume that the reason the legislature inserted the words "or promise" after "contract" in subsection (a)(7) is that promises are sometimes enforceable and actionable even when the agreement at issue does not technically qualify as a contract.

¶ 25    Again, the Note here provided that, if ASAP failed to deliver the nitrile gloves to DRQ in Illinois as promised, ASAP would be required to repay AA the down payment that AA fronted ASAP. Under the literal terms of the long-arm statute, the suit to recover this down payment under the Note involved the "performance of [a] *** promise substantially connected with this

No. 1-23-2289

State." 735 ILCS 5/2-209(a)(7) (West 2022).

¶ 26    We glean little more in terms of specific arguments raised by ASAP in its brief. Erring on the side of caution, we might discern a due-process argument as well. Under that rubric, two different forms of personal jurisdiction justify haling a nonresident into a forum state—general jurisdiction and specific jurisdiction. *Kothawala*, 2023 IL App (1st) 210972, ¶ 17. Under both forms, we may freely consider federal as well as state law. *Russell*, 2013 IL 113909, ¶ 33.

¶ 27    General jurisdiction is unconcerned with the transaction or lawsuit at issue; it applies when the defendant is sued in its "home" state. *Id.* ¶ 18. As ASAP is a New York company, general jurisdiction is inapplicable here.

¶ 28    Specific jurisdiction is unique to the individual case and considers what actions the defendant took to avail itself of jurisdiction in the forum state. *Id.* ¶ 19. We ask whether " 'the defendant has purposefully directed [its] activities at residents of the forum ' " and if " 'the litigation results from alleged injuries that arise out of or relate to those activities.' " *Rios v. Bayer Corp.*, 2020 IL 125020, ¶ 20 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

¶ 29    The purposeful-availment prong requires that the defendant commit "some act"—not necessarily an act related to the lawsuit but simply "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 359 (2021); see *Kothawala*, 2023 IL App (1st) 210972, ¶ 18.  A plaintiff "must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or *entering a contractual relationship centered there*." (Emphasis added.) *Ford Motor*, 592 U.S. at 359 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). Here, ASAP entered into a contract centered in Illinois by

contracting to ship and deliver nitrile gloves to the DRQ warehouse in Batavia, Illinois.

¶ 30    The second prong requires a causal relationship between the defendant's contact within the forum state and the lawsuit at issue. *Id*. That is not a close question, either. The Note here specifically contemplated ASAP's performance in Illinois—shipping the gloves to an airport in Chicago and then delivering them to the DRQ warehouse in Batavia, Illinois. It was literally the only act contemplated in the Note; if ASAP performed its obligation, no repayment would be due under the Note. Because ASAP failed to perform, repayment was due. ASAP unquestionably directed its activities to Illinois, and AA's injury arose from that Illinois-based activity. See *id*.

¶ 31    We would add that, while Shamsi testified that he signed the final documents—the sales agreement and the Note—in New York, he also testified that he negotiated their terms, sending drafts back and forth, from his office in Batavia, Illinois. And ASAP conceded that Illinois law governed this transaction, as it relied on Illinois statutes to challenge the validity and enforceability of the Note at issue. See *Russell v. SNFA*, 2013 IL 113909, ¶ 81 (parties' negotiations over contract and applicable governing law are relevant considerations).

¶ 32    Against all of this, ASAP cites no decision, Illinois or federal, specifically supporting its position, only case law generally outlining the prevailing law on personal jurisdiction. Considering the fact-intensive nature of specific personal jurisdiction, the failure to cite any on-point case law borders on forfeiture of the argument altogether. Regardless, ASAP has not provided us any basis to find error with the circuit court's judgment. We affirm that judgment.

¶ 33    Affirmed.