THE CRADLE SOCIETY, Plaintiff-Appellee, v. ADOPT AMERICA NETWORK, Defendant-Appellant.

First District (3rd Division) No. 1—08—0978

Opinion filed March 18, 2009.

Thomas F. Ryan and Charles J. Biro, both of Sidley Austin LLP, of Chicago, for appellant.

Jonathan Judge and Nora Kersten Walsh, both of Schiff Hardin LLP, of Chicago, for appellee.

JUSTICE THEIS delivered the opinion of the court:

Adopt America Network appeals from an interlocutory order of the circuit court of Cook County denying its motion to dismiss The Cradle Society's complaint based on the doctrine of *forum non conveniens*. Adopt America Network contends on appeal that the circuit court abused its discretion in ruling that the relevant private and public interest factors did not strongly favor suit in Ohio. For the following reasons, we affirm the judgment of the circuit court.

BACKGROUND

The Cradle Society (Cradle), a private Illinois adoption agency, brought this action against Adopt America Network (AAN), a private Ohio adoption agency, under theories of negligent misrepresentation and unjust enrichment. Cradle's complaint alleges that, in 2004, it

sought to place an Illinois infant, M.A., for adoption with a family in Ohio. As part of the adoption process, and pursuant to the Interstate Compact on Placement of Children Act (45 ILCS 15/1 *et seq.* (West 2006)) and the applicable Ohio laws governing the placement of children in Ohio, AAN provided Cradle with a home study report and conducted several postplacement visits with the Ohio family. The reports represented that the Ohio parents were suitable adoptive parents and that their home was safe for an adoptive placement. The family had 10 other children already living in the home. Cradle relied on the reports AAN generated in placing M.A. for adoption in the Ohio home and in evaluating the household as a suitable home for adoptive placement.

Cradle's complaint further alleges that in September 2005, prior to M.A.'s adoption being finalized, the Huron County Department of Job and Family Services removed all of the children from the Ohio home due to alleged abuse and neglect, and sought permanent custody of the children, including M.A. Cradle participated in these proceedings on behalf of M.A. On March 20, 2006, the Huron County court of common pleas, juvenile division, ruled that some of the older children had been abused and that all of the children, including M.A., were dependent because of the conditions and environment that led to certain siblings being endangered. The court further found it was in M.A.'s best interest to remain in the temporary custody of the Huron County Department of Job and Family Services, given her unique status as never having been formally and completely adopted by the family in Ohio. The court further found that Cradle's involvement was necessary to the implementation of an adoption plan and that Cradle was still authorized on behalf of the biological parents to consent to any proposed adoption. The court also made the specific finding that M.A. was placed in the home "as a result of an incomplete and inaccurate home study completed by [AAN]" and that the home study "failed to disclose material information concerning the [family] and their home." The court's order was attached to the complaint.

Cradle subsequently filed this action alleging, *inter alia*, that AAN's reports contained false statements of material fact, that Cradle relied on the truth of these statements in making decisions regarding the placement of M.A., and as a result of AAN's negligent misrepresentations regarding the suitability of the home and the family, Cradle was required to expend resources to protect M.A. as her legal guardian. Additionally, Cradle sought to recoup the amount it spent to compensate AAN for its postplacement visits and reports under a theory of unjust enrichment and also sought punitive damages to deter further alleged tortious conduct by AAN.

Thereafter, the circuit court denied AAN's motion to dismiss the complaint for lack of personal jurisdiction and *forum non conveniens*. Pursuant to Supreme Court Rule 306(a)(2) (210 Ill. 2d R. 306(a)(2)), this court granted AAN's petition for leave to appeal the court's ruling with respect to the *forum non conveniens* issue.

ANALYSIS

*Forum non conveniens* is an equitable doctrine founded in considerations of fundamental fairness and sensible and effective judicial administration, which allows a circuit court to decline jurisdiction in the exceptional case where a trial in another forum with proper jurisdiction and venue would better serve the ends of justice. *First American Bank v. Guerine*, 198 Ill. 2d 511, 515 (2002). The decision to grant or deny a motion to dismiss based on the doctrine of *forum non conveniens* lies within the sound discretion of the trial court. *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 441-42 (2006). Accordingly, a reviewing court will uphold the trial court's decision on such a motion unless no reasonable person would adopt the view taken by the trial court. *Langenhorst*, 219 Ill. 2d at 442. Our supreme court has repeatedly noted that the circuit court should exercise its discretionary power to dismiss *"only in exceptional circumstances when the interests of justice require a trial in a more convenient forum."* (Emphasis in original.) *Langenhorst*, 219 Ill. 2d at 442.

In determining whether *forum non conveniens* applies, the trial court must balance private interest factors affecting the convenience of the litigants and public interest factors affecting the administration of the courts. *Langenhorst*, 219 Ill. 2d at 443. Relevant private factors include: " '(1) the convenience of the parties; (2) the relative ease of access to sources of testimonial, documentary, and real evidence; and (3) all other practical problems that make trial of a case easy, expeditious, and inexpensive.' " *Langenhorst*, 219 Ill. 2d at 443, quoting *Guerine*, 198 Ill. 2d at 516. Relevant public interest factors include: "(1) the interest in deciding controversies locally; (2) the unfairness of imposing trial expense and the burden of jury duty on residents of a forum that has little connection to the litigation; and (3) the administrative difficulties presented by adding litigation to already congested court dockets." *Langenhorst*, 219 Ill. 2d at 443-44.

The trial court does not weigh the private interest factors against the public interest factors. *Gridley v. State Farm Mutual Automobile Insurance Co.*, 217 Ill. 2d 158, 169-70 (2005). Rather, the trial court must evaluate the total circumstances of the case in determining whether the balance of factors strongly favors transfer. *Gridley*, 217 Ill. 2d at 169-70.

A further consideration is deference to a plaintiff's choice of forum. *Dawdy v. Union Pacific Ry. Co.*, 207 Ill. 2d 167, 173 (2003). A plaintiff's right to select the forum is substantial, and unless the factors weigh strongly in favor of dismissal, the plaintiff's choice of forum should rarely be disturbed. *Dawdy*, 207 Ill. 2d at 173. Thus, when a plaintiff chooses his home forum it is reasonable to assume that the choice of forum is convenient and is entitled to substantial deference. *Dawdy*, 207 Ill. 2d at 173. The defendant bears the burden to show that the relevant private and public interest factors "strongly favor" the defendant's choice of forum to warrant disturbing plaintiff's choice. *Langenhorst*, 219 Ill. 2d at 446.

With these principles in mind, we consider the relevant factors as they apply to the facts of this case. With regard to the private interest factors, we consider the deference owed to Cradle's choice of forum and the convenience of the parties. Because Cradle chose Illinois as the forum and it is a resident of Illinois, we assume that the chosen forum is convenient for it. *Dawdy*, 207 Ill. 2d at 173. AAN acknowledges that the convenience of the parties is "arguably a wash" since Cradle resides in Illinois, but argues that Cradle is an organization of more substantial means and has been "willing and able to litigate matters related to the [family] in Ohio." It contends that Cradle's choice of forum should be entitled to less deference because it established substantial ties to Ohio by voluntarily intervening in the court proceedings there on behalf of M.A. Nevertheless, whether Cradle is willing or able to litigate in Ohio has no bearing on whether it would be more convenient for it. Furthermore, Cradle alleges that it participated in the proceedings in Ohio only as a result of AAN's negligence. Moreover, *Stein v. Volkswagen of America, Inc.*, 135 Ill. App. 3d 127 (1985), the case upon which AAN relies for support, is readily distinguishable. There, the plaintiff's choice was entitled to less deference because the plaintiff resided in the alternate forum for five months out of the year. Accordingly, Cradle's choice is entitled to substantial deference. *Dawdy*, 207 Ill. 2d at 173.

With respect to ease of access to sources of proof, we recognize that many of the witnesses may potentially reside in Ohio and that Illinois courts do not have subpoena power in Ohio, affecting the ability to secure the attendance of unwilling witnesses to compulsory process. Nevertheless, as the burden of proof lies with the defendant on this issue, we will not speculate about a witness's whereabouts or unwillingness where AAN has not yet identified specific witnesses who would be unwilling to testify in Illinois. See *Brant v. Rosen*, 373 Ill. App. 3d 720, 728 (2007) (trial court was not free to speculate about possible unwillingness of unnamed witnesses who would have to travel from

Missouri to Illinois); *Ferguson v. Bill Berger Associates, Inc.*, 302 Ill. App. 3d 61, 72 (1998) (court is not required to speculate about current whereabouts or willingness to testify).

Additionally, the record reflects that many of the witnesses whose testimony would be relevant and significant to the issues in this case include both AAN representatives in Ohio who assisted in generating the home study and postplacement reports and Cradle representatives in Illinois that received the information and relied on the alleged misrepresentations in making decisions about M.A.'s placement. Those Ohio representatives employed by AAN are subject to compulsory process in Illinois under Supreme Court Rule 237(b) (210 Ill. 2d R. 237(b); *Woodward v. Bridgestone/Firestone, Inc.*, 368 Ill. App. 3d 827, 835 (2006)). As the trial court recognized at the hearing on the motion, other potential witnesses, including the independent contractor who performed the adoption assessments, could submit an evidence deposition in Ohio, alleviating the necessity of travel to Illinois. *Kwasniewski v. Schaid*, 153 Ill. 2d 550, 554 (1992).

To the extent that AAN argues that its expert witnesses on damages are located in Ohio, the location of expert witnesses is not accorded great significance where both parties will presumably have experts from Ohio and Illinois. Presumably, those witnesses would be compensated for their travel in either Illinois or Ohio and would be inclined to testify wherever instructed. See *Griffith v. Mitsubishi Aircraft International, Inc.*, 136 Ill. 2d 101, 112 (1990); *Ferguson*, 302 Ill. App. 3d at 72. Additionally, AAN asserts that a jury would have no access to the Ohio home. However, a viewing of the home would not be an issue here where the record reflects that the home is not in the same condition as it existed at the relevant time period, and the physical conditions of the home have been preserved elsewhere in the public record. *Langenhorst*, 219 Ill. 2d at 448-49 (jury view of the accident site as it existed on the occurrence date was not possible where conditions alleged to have caused the accident no longer existed).

Lastly, considering the other practical problems that make trial easy, expeditious, and inexpensive, AAN asserts that numerous fact witnesses bearing on the conduct giving rise to Cradle's injuries are in Ohio, making it more practical and cost effective for this case to be tried in Ohio. The trial court recognized and the record reflects that Cradle will also have some witnesses that are presumably residents of Illinois who will be called at trial, including Ms. Okeke Banks, a Cradle representative, who would be inconvenienced in Ohio. Thus, on balance, this factor weighs only slightly in favor of Ohio.

In considering the public interest factors, AAN asserts that the trial court abused its discretion when it considered the protection of

Illinois minors as an overriding public interest factor. Although AAN asserts that this case is not about the welfare of the child, it is indeed about alleged inaccurate information that led to an Illinois agency making a placement of an Illinois child in an unsuitable home, resulting in the Illinois agency having to expend resources to protect that child.

Ultimately, this is a case with interstate implications and, thus, both states have an equally compelling connection to the controversy. Ohio has an interest in the controversy as much of the conduct arising out of the alleged negligent misrepresentation occurred in Ohio. The Interstate Compact on the Placement of Children dictates that Illinois also has a strong interest in ensuring that its Illinois children "receive the maximum opportunity to be placed in a suitable environment and with persons or institutions having appropriate qualifications and facilities to provide a necessary and desirable degree and type of care." 45 ILCS 15/1, art. I(a) (West 2006). In addition, Illinois has a keen interest in ensuring that its agencies "obtain the most complete information on the basis on which to evaluate a projected placement before it is made." 45 ILCS 15/1, art. I(c) (West 2006). Where both of these interests are implicated here, it cannot be said that this factor weighs strongly in favor of Ohio.

Further, it would not be a burden on an Illinois jury to decide a controversy that involves one of its residents who was allegedly provided with inaccurate and incomplete information in making its decision to place an Illinois child for adoption and where the ultimate economic impact of those alleged misrepresentations was felt in Illinois.

With respect to the court congestion, we note that our supreme court has recognized that a trial court is in a better position than a reviewing court to assess the burdens on its own docket. *Boner v. Peabody Coal Co.*, 142 Ill. 2d 523, 539 (1991). Here, AAN did not raise the factor of docket congestion or provide the trial court with a comparison of the congestion of the docket in Cook County and the docket in Huron County. Therefore, the court presumably did not take that factor into account in its analysis. Nevertheless, AAN requests that we take judicial notice of the public record indicating that in 2006, the average civil case in Cook County would take 38 months to reach a verdict, whereas it would only take 24 months in Huron County. Given the congestion in Illinois, this factor favors Ohio, but is not enough to justify dismissal of the case. See *Brummett v. Wepfer Marine, Inc.*, 111 Ill. 2d 495, 503 (1986) (courts are extremely reluctant to remove cases because of crowded dockets); *Kwasniewski*, 153 Ill. 2d at 555 (congestion is the least significant of the public interest factors).

Lastly, we reject AAN's assertion that *Vinson v. Allstate*, 144 Ill. 2d 306 (1991), is dispositive because each case must be decided based on a case-by-case consideration of convenience and fairness. *Gridley*, 217 Ill. 2d at 168.

After evaluating the total circumstances of the case, we hold that the trial court did not abuse its considerable discretion in denying AAN's motion to dismiss. AAN failed to meet its burden of demonstrating that the balance of private and public interest factors strongly favored suit in Ohio. Cradle chose to bring this cause of action in its home state, where some of the witnesses reside, where it relied on the alleged misrepresentations, and where the ultimate economic injury was felt. It cannot be said that no reasonable person would adopt the position taken by the court. Accordingly, for all of the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

QUINN and COLEMAN, JJ., concur.