2024 IL App (1st) 231302-U

FIRST DISTRICT,
FIRST DIVISION
June 24, 2024

No. 1-23-1302

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| CLARKE MOSQUITO CONTROL PRODUCTS, INC., | ) ) ) | |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| LEE CONTAINER IOWA, LLC, | ) ) | |
| Defendant-Appellant | ) ) ) ) | No. 2022 L 011338 |
| (Barrel Accessories and Supply Company, Inc., BASCO, Inc., BASCO Logistics, Inc., Grief Packaging, LLC, Inhance Technologies, LLC, Inhance Technologies Holdings, LLC, and Inhance Technologies Holdings Co-Member, Inc., | ) ) ) ) ) ) ) | Honorable Ronald F. Bartkowicz, Judge Presiding. |
| Defendants). | ) ) | |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Justices Lavin and Pucinski concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We affirm the circuit court's denial of defendant's motion to dismiss where (1) Illinois had specific jurisdiction over nonresident defendant that sold allegedly defective containers directly to Illinois plaintiff and maintained the parties' business relationship through yearly visits to Illinois, and (2) the circuit court did

not abuse its discretion in finding that the private and public interest factors did not strongly favor dismissal under the doctrine of *forum non conveniens*.

¶ 2 Plaintiff Clarke Mosquito Control Products, Inc. (Clarke) filed a complaint against Lee Container Iowa, LLC (Lee) to recover economic damages sustained from its use of defendant's allegedly defective fluorinated high density polyethylene (HDPE)[1] containers to store and ship its liquid mosquito control products to plaintiff's customers. Plaintiff alleged that defendant's containers had a propensity to leach a harmful pollutant into plaintiff's products, resulting in a voluntary recall under threat of action by the United States Environmental Protection Agency (USEPA). Defendant appeals pursuant to Supreme Court Rule 306(a)(2) and (a)(3) (eff. Oct. 1, 2020) from the circuit court's order denying its motion to dismiss based on lack of personal jurisdiction and *forum non conveniens*. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4 Plaintiff is a privately held Illinois company located in the "Chicago area" that provides mosquito control services, pesticides, and equipment to municipal and state agencies. Defendant is an Iowa limited liability company that manufactures and sells fluorinated and non-fluorinated HDPE containers. Defendant's principal place of business is in Centerville, Iowa.

¶ 5 On December 21, 2022, plaintiff filed a complaint in the circuit court of Cook County, seeking to recover economic damages resulting from its use of allegedly defective fluorinated HDPE containers purchased from defendant and Barrell Accessories and Supply Company, Inc. (BASCO), and fluorinated by Inhance Technologies Holdings, LLC (Inhance).[2] BASCO is an Illinois corporation with its principal place of business in Springfield, Illinois, and Inhance is a

_____

[1] Defendant explains in its appellate brief that fluorination "creates a barrier between the container and its contents." HDPE is a type of plastic.

[2] BASCO and Inhance are not parties to this appeal.

Delaware limited liability company with its principal place of business in Houston, Texas. Plaintiff asserted claims for breach of implied warranty of merchantability (counts I and II), strict product liability (counts III and IV), breach of contract (counts VI and VII), and negligence (counts VIII and IX) against defendant and BASCO; and strict product liability (count V), negligence (count X), and violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act (count XI) against Inhance.[3]

¶ 6        Relevant here, plaintiff alleged that from 2018 through 2020, it purchased 2.5 gallon "fluorinated plastic jugs" from defendant "for the shipping of Clarke liquid products to Clarke customers." Plaintiff included a July 17, 2020 purchase order and order acknowledgement, both of which listed plaintiff's facility in Roselle, Illinois as the shipping address.

¶ 7        On October 5, 2020, USEPA sent plaintiff a "request for information letter," indicating that polyfluoroalkyl substances (PFAS) were discovered in a sample of plaintiff's liquid mosquito control product, Anvil 10+10 (Anvil), in Massachusetts. PFAS is a pollutant that is "hazardous to the health and safety of humans." USEPA "warn[ed]" that it "reserve[d] the right to bring an action against [plaintiff] *** assessing or seeking penalties and/or other relief for any" violations of the Federal Insecticide, Fungicide and Rodenticide Act.

¶ 8        On December 23, 2020, USEPA informed plaintiff that "test results indicated that fluorinated plastic containers caused the alleged PFAS contamination of [plaintiff's] product." Subsequent testing by a private laboratory retained by plaintiff revealed that "[t]he plastic fluorinated containers sold by [BASCO] and [defendant] to Clarke tested positive for PFAS."

---

[3] On June 23, 2023, the circuit court dismissed counts X and XI pursuant to Inhance's motion to dismiss, but denied the motion as to count V.

Plaintiff alleged that "containers sold *** by [defendant] and [BASCO]" were "defective as a result of the propensity to leach PFAS into the liquid shipped within the container."

¶ 9 On October 14, 2021, plaintiff voluntarily recalled Anvil and "other products that could have been contaminated with PFAS" at "no cost to [its] customers." As a result, plaintiff incurred damages in excess of $1,431,070.00 from the "contaminated containers" sold by defendant and $4,034,201.00 from the those sold by BASCO.

¶ 10 On February 23, 2023, defendant filed a motion under section 2-301 of the Code of Civil Procedure (735 ILCS 5/2-301 (West 2022)) and Supreme Court Rule 187 (eff. Jan. 1, 2018), seeking to dismiss based on lack of personal jurisdiction and *forum non conveniens*. Defendant argued that Illinois does not have general jurisdiction because defendant does not "carr[y] on systematic business activity in Illinois."

¶ 11 Defendant asserted that specific jurisdiction was also lacking because it had not "purposefully availed itself of the privilege of conducting activities in Illinois" under either the "narrow" or "broad" stream of commerce theories. Specifically, "[plaintiff's] claims did not arise from any manufacturing activity of [defendant] in Illinois"; "there are no facts alleged that [defendant] *** specifically sought [plaintiff's] business in Illinois"; and plaintiff "initiated the purchase of a limited number of *** containers" and "directed those containers to be transported to its facility" under the "FOB 3rd Party" delivery term.

¶ 12 Defendant also moved to dismiss under the doctrine of *forum non conveniens*. Defendant argued that the private interest factors favored Iowa because the "transaction giving rise to this lawsuit was completed in Iowa"; the manufacturing processes occurred in Iowa; the witnesses involved in the transaction (except for plaintiff) are "largely located in Iowa"; and "[t]he governing law *** should be Iowa law." As to the public interest factors, defendant claimed that

the only connection to Illinois is plaintiff's convenience and, "given the case load of the Cook County Courts, alternative forums would pose a lesser burden."

¶ 13 The declaration of defendant's Vice President and General Manager, Joel Varnedoe, established that defendant is not registered to do business in Illinois; does not own or rent property, maintain offices, or have employees in Illinois; and has not marketed or advertised in Illinois regarding the containers at issue. Varnedoe maintained that litigation "would be more convenient in Iowa" because "the witnesses to the transaction are largely located in Iowa, along with all the relevant documents and records."

¶ 14 Plaintiff responded that defendant purposefully availed itself of Illinois when it "made sales with knowledge that all of the products would be shipped to Illinois and supported the transactions with multiple sales calls to [plaintiff's] office in Roselle, Illinois." Additionally, the cause of action was related to defendant's contacts with Illinois because the sale of defendant's allegedly "contaminated containers to [plaintiff] directly caused extensive damages associated with the quarantine, recall and destruction" of plaintiff's products.

¶ 15 Plaintiff further asserted that "virtually all" of the relevant *forum non conveniens* factors favor Illinois. As to the private interest factors, "the majority of the documents, data and witnesses required for the trial" are in Illinois, where plaintiff and BASCO are both located; plaintiff and Inhance would be required to litigate two separate trials regarding "the same or similar issues" if the motion was granted; and Inhance has "not contested venue in Illinois." Regarding the public interest factors, while acknowledging that the "crowded Cook County docket" favors dismissal, plaintiff claimed that both Illinois and plaintiff have "interests in deciding this controversy locally, and the residents of Illinois are connected to the potential contamination" from defendant's products.

¶ 16        The declaration of Steve Rizzi, plaintiff's Chief Financial Officer, established that from March 15, 2012 through August 6, 2020, defendant sold approximately 156,750 fluorinated HDPE containers to plaintiff at a total cost of $283,336.94. The containers were "delivered to [plaintiff's] production facility located in Roselle, Illinois," where they were filled with plaintiff's liquid mosquito control products and "sold and delivered to customers in the State of Illinois and throughout the country." Rizzi maintained that "[a]ll of [plaintiff's] witnesses with personal knowledge" and "production and corporate records related to the [c]ase" are in Illinois. Plaintiff included a spreadsheet of all of its fluorinated and non-fluorinated HDPE container purchases from defendant from 2012 through 2021, including, the invoice date, the quantity of containers purchased, the cost per unit, and the total cost for each transaction.

¶ 17        The declaration of plaintiff's Supply Chain Manager, Jeff Larson, established that defendant "was already a supplier" when he started working for plaintiff in 2010. From 2010 through 2021, Larson frequently communicated with defendant's Sales Representative, Mike Stevens. Stevens would "contact[ ] [Larson] via telephone or email to arrange visits to [plaintiff's] formulation facility" in Roselle, Illinois "on at least an annual basis from 2010 through 2020." During these visits, Stevens would "ask[ ] questions to make sure that [plaintiff's] needs as a customer of [defendant] were being satisfied." As an example, plaintiff included a 2012 email from Stevens offering to buy pizza for a meeting at plaintiff's Roselle facility.

¶ 18        Defendant replied, in relevant part, that Stevens "did not take or receive actual product orders" during his "courtesy visits" to Roselle and that the parties' "decade-long" business relationship is "irrelevant" since plaintiff's account was only a "small percentage of [defendant's] total revenue, unit sales, and fluorinated unit sales."

¶ 19      In support of it's reply, defendant included the declarations of Mike Stevens, Tanya Tovar, and David Taylor. Stevens, Lee's Midwest Sales Manager, attested that in late 2008, he "had discussions with Clarke['s] *** Jim Yeager mostly by email or phone regarding Clarke *** becoming a Lee Container Iowa customer." They discussed business terms and "establish[ed] a client relationship." Plaintiff's orders were fulfilled at defendant's plant in Iowa, where "Inhance *** provides on-site fluorination services." Because all of plaintiff's orders were "Collect, CPU-Customer Pick Up, or FOB: Lee Container—Centerville, IA," plaintiff had "full control of carrier selection, and *** arranged for and *** paid for all freight and shipping costs." On only one occasion when plaintiff could not "locate a shipper," defendant shipped the containers " 'pre-paid & add,' " *i.e.*, "where shipping costs were included with the product cost."

¶ 20      In 2019 and 2020, "as in most years," Stevens would make "courtesy visits" to plaintiff's facility in Roselle a "few times a year when [he] was in the area." Stevens would "ask [plaintiff] how their business was doing, how [defendant was] doing as a supplier, and thank them for their business," but "did not take or receive actual product orders."

¶ 21      Tovar, Lee's Customer Sales Representative based in Georgia, explained that plaintiff would send purchase orders to her via email, and she would return an order acknowledgment. Taylor, Lee's Customer Sales Accountant, attested that plaintiff's account "represents only a small percentage" of defendant's "total revenue, unit sales, and fluorinated unit sales." Taylor, Tovar, and Stevens all maintained that "[a]ny trial of this matter in Illinois is inconvenient to [them]" because defendant "has no facilities in Illinois," and that "Iowa would be more convenient."

¶ 22      On June 23, 2023, the circuit court denied defendant's motion to dismiss, finding that it had specific jurisdiction over defendant pursuant to subsections (a)(1) and (c) of Illinois' long-

arm statute (735 ILCS 5/2-209(a)(1), (c) (West 2022)). Under subsection (a)(1), the court found that defendant "transact[ed] *** business" in Illinois, because plaintiff is an "in-state customer and defendant's "business transactions with [plaintiff] *** g[ave] rise to the cause of action."

¶ 23 The circuit court also found that it had specific jurisdiction over defendant pursuant to subsection (c), known as the "catch-all" provision of the long-arm statute (see 735 ILCS 5/2-209(c) (West 2022)), which "allows the court to find jurisdiction over nonresidents to the extent permitted by the Federal Due [P]rocess clause." Specifically, defendant purposefully availed itself of the privilege of conducting business in Illinois where Stevens "offer[ed] to sponsor pizza as lunch for [plaintiff's] employees in Illinois before having a sales call with them" and went on "several business trips to [plaintiff's] facility in Illinois in order to "maintain the business relationship[ ]" with plaintiff; and, "[a]s a result of [defendant's] conduct[ ] ***, [plaintiff] purchased 156,750 containers from [defendant] at a total cost of $283,336.94 from 2012 to 2020."

¶ 24 The circuit court further found that "it [was] not necessary to analyze [specific jurisdiction] under a stream-of-commerce theory" because defendant had "direct contact with [plaintiff] through selling of the containers." Nevertheless, there were "sufficiently alleged facts supporting [defendant's] intent to do business with Illinois, which establishes minimum contacts *** under either a broad or narrow view of the stream-of-commerce theory."

¶ 25 The circuit court concluded that defendant's contacts with Illinois were sufficiently related to plaintiff's claims because "[defendant's] conduct of selling contaminated or unqualified products *** caused economic damage to an in-state customer." Requiring defendant to litigate in Illinois was also "reasonable and appropriate." Plaintiff "is interested in obtaining effective and convenient relief in Illinois as an in-state resident" and Illinois "is also interested"

because defendant's "conduct that gave rise to the claim resulted in roughly $1.4 million worth of economic damages suffered by *** an Illinois company."

¶ 26    The circuit court also denied defendant's motion to dismiss based on *forum non conveniens*. Initially, because plaintiff filed suit in the "county in which [it] resides," the court gave "standard" rather than "less deference" to plaintiff's choice of forum.

¶ 27    Weighing the private interest factors, the convenience of the parties favored Illinois. While the containers were manufactured by defendant and fluorinated by Inhance in Iowa, Inhance "did not raise challenges on the doctrine of *forum non conveniens*" and plaintiff averred that "the majority of documents, data, and witnesses required for the trial of this action" are in Illinois. However, the relative ease of access to testimonial, documentary, and real evidence "[did] not favor either forum," since the parties maintained that such evidence is in Illinois and Iowa, respectively. The "possibility of viewing the premises" favored Illinois, since defendant "ha[d] not indicated that a jury viewing *** may occur in this matter." All other practical considerations that make trial easy, expeditious, and inexpensive, also favored Illinois because if the motion was granted, "[plaintiff] and Inhance *** [would] be required to litigate two separate actions in Illinois and Iowa regarding the same subject matter." Since it is "unclear" under whose control the containers were contaminated, the circuit court found that it "would be [an] inefficient and expensive use of judicial resources" to have "two jury trials to decide on the same subject matter."

¶ 28    Regarding the public interest factors, the circuit court found that docket congestion was "of relatively low significance" because defendant did not provide "any additional evidence" to "show the alternative venue would resolve the case more quickly." The court further found that "[a] jury made of Cook County community members has a strong interest in this litigation

because it involves alleged negligence toward one of its residents and the alleged economic damage resulted in Illinois." However, there was a "stronger connection" to Iowa because the "incident that gave rise to the injuries in this matter occurred in Iowa" and the case involves "Iowa defendants, made up of Iowa residents and businesses." Overall, the circuit court concluded that the relevant public and private interest factors "did not support transfer of venue from Cook County, Illinois to Iowa."

¶ 29    We granted defendant's petition for leave to appeal pursuant to Supreme Court Rule 306(a)(2), (3) (eff. Oct. 1, 2020).

¶ 30                                    II. ANALYSIS

¶ 31                            A. Specific Personal Jurisdiction

¶ 32    "The plaintiff has the burden of establishing a *prima facie* basis to exercise personal jurisdiction over a nonresident defendant." *Aspen American Insurance Co. v. Interstate Warehousing, Inc.*, 2017 IL 121281, ¶ 12 (citing *Russell v. SNFA*, 2013 IL 113909, ¶ 28). In ruling on a motion to dismiss for lack of personal jurisdiction, "the court shall consider all matters apparent from the papers on file in the case, affidavits submitted by any party, and any evidence adduced upon contested issues of fact." 735 ILCS 5/2-301(b) (West 2022). "Any unrebutted allegations must be accepted as true [citation], but any conflicts in the supporting documentation must be resolved in the plaintiff's favor [citation]." *Zamora v. Lewis*, 2019 IL App (1st) 181642, ¶ 42. Where, as here, the circuit court determines a jurisdictional question based on only documentary evidence, our review is *de novo*. *Russell*, 2013 IL 113909, ¶ 28.

¶ 33    The parties agree that Illinois cannot exercise general personal jurisdiction over defendant. See *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (general jurisdiction "to hear any and all claims against" defendants exists "when their

affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State"). Therefore, we must determine whether Illinois courts have specific personal jurisdiction over defendant.

¶ 34     Illinois' long-arm statute provides several bases for exercising jurisdiction over a nonresident defendant. See 735 ILCS 5/2-209 (West 2022). Subsection (c), referred to as the "catch-all provision," provides that "[a] court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c) (West 2022); see also *Russell*, 2013 IL 113909, ¶ 30. "Illinois courts now treat subsection (c) as an independent basis for exercising personal jurisdiction over a defendant." *Kostal v. Pinkus Dermatopathology Laboratory, P.C.*, 357 Ill. App. 3d 381, 386 (2005). Therefore, "if the contacts between a defendant and Illinois are sufficient to satisfy both federal and state due process concerns, the requirements of Illinois' long-arm statute have been met, and no other inquiry is necessary."[4] *Id.* at 387. Where, as here, defendant "does not argue that it is entitled to greater due process protections under the Illinois due process clause" we "do not need to determine *** the extent, if any, that Illinois due process protections differ from federal *** on the issue of personal jurisdiction." *Russell*, 2013 IL 113909, ¶ 33.

¶ 35     "[T]he constitutional touchstone" of personal jurisdiction "remains whether the defendant purposefully established 'minimum contacts' in the forum State" (*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *International Shoe Co v. Washington*, 326 U.S. 310, 316 (1945)), such that "maintenance of the suit there does not offend 'traditional notions of fair play and substantial justice.' " (*Wiles v. Morita Iron Works Co., Ltd.*, 125 Ill. 2d 144, 150

---

[4] Because, as discussed herein, we find that the "catch-all provision" is satisfied, and because we may affirm the circuit court's judgment on any basis in the record (*Mullins v. Evans*, 2021 IL App (1st) 191962, ¶ 25), we do not address defendant's argument that it did not "transact[ ] *** any business within this State" under subsection (a)(1) of the long-arm statute (735 ILCS 5/2-209(a)(1) (West 2022)).

(1988) (quoting *International Shoe*, 326 U.S. at 316)). " '[T]he foreseeability that is critical to due process analysis' " is " 'that the defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there.' " *Burger King*, 471 U.S. at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

¶ 36                                     1. Purposeful Availment

¶ 37        "Specific jurisdiction requires a showing that the defendant purposefully directed its activities at the forum state and the cause of action arose out of or relates to the defendant's contacts with the forum state." *Russell*, 2013 IL 113909, ¶ 40 (citing *Burger King*, 471 U.S. at 472). "[S]ingle or occasional acts in the state" are sufficient to subject a nonresident defendant to a state's jurisdiction, but "only with respect to matters related to those acts." (Internal quotation marks omitted.) *Id.* However, those contacts cannot be "random or attenuated" or based on the "unilateral activity of a third party." *Id.* ¶ 42.

¶ 38        Initially, the parties disagree over the relevant time period for assessing defendant's contacts with Illinois. Relying on *Reeves v. Baltimore & Ohio Railroad Co.*, 171 Ill. App. 3d 1021, 1027 (1988), defendant asserts that the "critical point" of inquiry is when "the defendant is made a party to the suit and is served with process." Plaintiff responds that the circuit court properly considered the context of the parties' 12-year supplier-customer relationship.

¶ 39        *Reeves* held that the relevant time period for determining whether a nonresident defendant is "doing business" in the forum state, which is equivalent to *general* jurisdiction (see *Kostal*, 357 Ill. App. 3d at 385), is from when "the claim arose or occurred up to and including the time the defendant was made party to the suit, and service of process was attempted." *Reeves*, 171 Ill. App. 3d at 1026-27 (examining the "underlying rationale set forth by the Illinois courts in the application of the 'doing business' standard, to determine what time period relevant"). The

court reasoned that, because a finding that a corporation is "doing business" in the state means that it has "consented to being sued in Illinois, and *** assents to service of process by Illinois courts," the "critical point *** of inquiry must be upon the time that the defendant is made a party to the suit and is served with process." *Id.* at 1027; see also *Howard v. Missouri Bone and Joint Center, Inc.*, 373 Ill. App. 3d 738, 742 (2007) (using the same time period to determine whether defendants were " 'present and doing business' in Illinois").

¶ 40        Because we are evaluating specific rather than general jurisdiction, the rationale behind *Reeves*' "critical point *** of inquiry" does not apply here. Rather, we must determine whether defendant "purposefully directed its activities at the forum state." *Russell*, 2013 IL 113909, ¶ 40 (citing *Burger King*, 471 U.S. at 472). The context of the parties' long-term business relationship is relevant to this determination. See, *e.g.*, *id* ¶¶ 15, 79 (considering a French defendant's "business relationship with [a manufacturer] in Rockford, Illinois, since 1997" and that over 2,000 of helicopter parts manufactured by defendant were sold to "entities located in Illinois" from 2000 to 2007, even though plaintiff's accident occurred in 2003); see also *Burger King*, 471 U.S. at 479 (emphasizing the need for a " 'highly realistic' approach" rather than " 'mechanical' tests" in evaluating minimum contacts, considering "prior negotiations and contemplated future consequences" between the parties). However, because defendant's contacts must also "arise out of" or "relate to" the cause of action, we take specific note of defendant's contacts directed at Illinois from 2018 through 2020, *i.e.*, when plaintiff alleges defendant sold the contaminated containers at issue. See *Kothawala v. Whole Leaf, LLC,* 2023 IL App (1st) 210972, ¶ 38 (considering defendant's direct sale of 2 million batteries into Illinois during the "relevant time period").

¶ 41    Defendant's assertion that it "did not purposefully direct its business activities at Illinois" is refuted by the record. In 2008, defendant's Midwest Sales Manager, Stevens, had discussions with a Clarke employee "regarding Clarke *** becoming a Lee Container Iowa customer." The record shows that over the course of 30 separate shipments from 2012 through 2020, defendant sold 156,750 fluorinated HDPE containers to plaintiff at a total cost of $283,336.94. Eight of those shipments occurred from 2018 through 2020, where defendant sold 37,950 fluorinated HDPE containers to plaintiff at a total cost of $70,768.10. "By engaging a business entity located in Illinois, [defendant] undoubtedly benefited from Illinois' system of laws, infrastructure, and business climate." See *Russell*, 2013 IL 113909, ¶ 81.

¶ 42    Defendant not only sold it products directly to plaintiff in Illinois, but also promoted those sales and sustained the parties' business relationship through Stevens' annual visits to plaintiff's facility in Roselle, Illinois from 2010 through 2020. Stevens would "ask [plaintiff] how their business was doing, how [defendant] was doing as a supplier" and "make sure that [plaintiff's] needs as a customer of Lee were being satisfied." By conducting these visits to maintain the parties' supplier-customer relationship and promote its business, defendant "deliberately 'reached out beyond' its home" and " 'exploit[ed] a market' " in Illinois. See *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 359 (2021); see also *Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact"). Accordingly, defendant's contacts directed at Illinois were not " 'random,' 'fortuitous,' *** 'attenuated,' " or based on the "unilateral act" of plaintiff. See *Wiles*, 125 Ill. 2d at 151 (quoting *Burger King*, 471 U.S. at 475).

¶ 43    Defendant argues that it did not direct its activities at Illinois because plaintiff would send a purchase order from "Illinois to Georgia *** and all other action occurred in Iowa." However, defendant's absence of physical presence in Illinois while receiving purchase orders or conducting sales is not dispositive. "So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Burger King*, 471 U.S. at 476; see, *e.g.*, *Aason, LLC v. Delaney*, 2011 IL App (2d) 101125, ¶¶ 23- 24 (although defendants worked from New York and did not have an Illinois office, they "purposefully reached out beyond New York to create a deliberate affiliation with an Illinois company from which they derived financial benefit by accepting in excess of 20 projects"); see also *Kostal*, 357 Ill. App. 3d at 396 (defendants had minimum contacts with the forum state where they "willingly received plaintiff's tissue specimens from Illinois ***, generated three diagnostic reports that were faxed or mailed to Illinois knowing they would be relied upon by plaintiff's physician and *** knowing that it would form the basis of plaintiff's further treatment in Illinois").

¶ 44    Defendant's reliance on *Bristol-Myers Squibb Co. v. Superior Court of California*, *San Fransisco County*, 582 U.S. 255 (2017) to argue that the "mere sale of good[*sic*] in a state does not satisfy *** purposeful availment," is misplaced. There, the Court did not address whether the defendant purposefully availed itself of the forum state. See *id.* at 274 (Sotomayor, J., dissenting) (noting that the defendant "[did] not dispute that it ha[d] purposefully availed itself of California's markets"). Rather, the Court held that there was not an "adequate link between the State and the [nonresident plaintiff's] claims," where plaintiffs were not prescribed the drug in California, did not purchase or ingest it in California, and were not injured in California. *Id.* at

264. Accordingly, *Bristol-Myers Squibb* has no bearing on whether defendant purposefully directed its activities at Illinois.

¶ 45     Defendant's reliance on *Wood v. Samsung SDI Co., Ltd.*, 2024 IL App (4th) 230994, is likewise unavailing.[5] The plaintiff in *Wood* sued Samsung for personal injuries sustained from an exploding e-cigarette containing a battery cell that was manufactured by Samsung. *Id.* ¶¶ 1- 2. The court held that Samsung did not meet the purposeful availment requirement where there was "no evidence that Samsung shipped [the battery cells at issue] into Illinois either directly or through an authorized agent" or "shipped *any* battery cells of any kind into Illinois." (Emphasis in original.) *Id.* ¶ 20. As such, the plaintiff "failed to show that Samsung has ever 'taken any act to form[ ] a contact of [its] own' with Illinois ***." *Id.* ¶ 24 (quoting *Ford Motor Co.*, 592 U.S. at 371). Whereas, here, defendant directly sold over 150,000 fluorinated HDPE containers to plaintiff over the course of their long-term business relationship.

¶ 46     Defendant attempts to minimize it contacts with Illinois by arguing that plaintiff "purchased [defendant's] product FOB," meaning, "[plaintiff] controlled the shipping of product to its preferred destination." The Uniform Commercial Code provides that when a delivery term is "F.O.B. the place of shipment, the seller must at that place ship the goods in the manner provided in this Article (Section 2-504) and bear the expense and risk of putting them into the possession of the carrier." 810 ILCS 5/2-319 (West 2022). The "primary purpose of a F.O.B. term is to allocate the risk of damage to goods between buyer and seller." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 472 (5th Cir. 2006).

---

[5] We granted defendant leave to cite *Wood v. Samsung SDI Co., Ltd.*, 2024 IL App (4th) 230994, as additional authority after briefing of this case was completed.

¶ 47    We find no reason for the F.O.B. term to preclude a finding of specific jurisdiction where defendant sold over 150,000 fluorinated HDPE containers directly to plaintiff, knew that those containers were being shipped to Illinois, and maintained its customer-supplier relationship with plaintiff through yearly visits to plaintiff's Roselle facility. Compare *Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137, 1144 (7th Cir. 1975) (rejecting defendant's argument that an F.O.B. Germany term precluded a finding of specific jurisdiction, as "that position is not *** a realistic evaluation of the nature and quality of [defendant's] business affairs, viewed in light of the arrangement with [an Illinois distributor]") with *Young v. Ford Motor Co.*, 2017 IL App (4th) 170177, ¶ 43 (finding no specific jurisdiction over Chinese company, in part, because the goods were "shipped F.O.B. to a Chinese port," where defendants' "role in the transaction concluded").

¶ 48    Accordingly, we find that defendant has "purposefully established 'minimum contacts' in the forum state" such that it "should reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 474.

¶ 49                                    a. Stream of Commerce

¶ 50    Defendant argues that specific jurisdiction is "neither justified under the 'narrow' or 'broad' stream-of-commerce theory." However, stream of commerce is just "one way to satisfy the requirements for specific jurisdiction." *Russell*, 2013 IL 113909, ¶ 43. Because we have concluded that defendant "purposefully established minimum contacts within the forum State" (*Burger King*, 471 U.S. at 476) and we may affirm on any basis in the record (*Mullins v. Evans*, 2021 IL App (1st) 191962, ¶ 25), we need not address defendant's arguments or the circuit court's findings related to stream of commerce.

¶ 51                                    2. Relatedness

¶ 52        Specific jurisdiction also requires that "the cause of action arose out of or relates to the defendant's contacts with the forum state." *Russell*, 2013 IL 113909, ¶ 40 (citing *Burger King*, 471 U.S. at 472). The "arising out of" or "related to" standard is lenient and flexible. *Id.* ¶ 83; see also *Ford Motor Co.*, 592 U.S. at 361-62 (rejecting a "causation-only" approach to relatedness).

¶ 53        Plaintiff has asserted several claims related to its use of defendant's allegedly defective containers, resulting in a voluntary recall of its products and substantial economic injury. As such, plaintiff's claims arise out of defendant's contacts with Illinois, *i.e.,* defendant's sale of allegedly defective fluorinated HDPE containers directly to plaintiff in Illinois. See *Kowal v. Westchester Wheels, Inc.*, 2017 IL App (1st) 152293, ¶ 42 ("plaintiff's injuries clearly arose out of and were directly related to her use of a bicycle manufactured by [nonresident manufacturer] and sold to plaintiff through" a retailer "authorized [by defendant] in Illinois" and, therefore, "the cause of action directly arose out of [the manufacturer's] contacts with Illinois"); *Kothawala,* 2023 IL App (1st) 210972, ¶¶ 4, 54 (nonresident defendant's sale of 2 million batteries to Illinois businesses "related to" plaintiff's claim seeking to recover for personal injuries sustained in Illinois from defective vape pen purchased in Illinois).

¶ 54                                3. Reasonableness

¶ 55        Having determined that defendant has the requisite minimum contacts with Illinois, we must also examine whether "subjecting it to litigation in Illinois is reasonable under traditional notions of fair play and substantial justice." See *Russell*, 2013 IL 113909, ¶¶ 34, 87. In making this determination, we consider: (1) the burden imposed on the defendant to litigate in a foreign forum; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in obtaining the most efficient resolution of the controversy. *Rios v. Bayer Corp.*, 2020 IL 125020, ¶ 30.

¶ 56　　　　Defendant argues that requiring it to litigate in Illinois "offends traditional notions of fair play and substantial justice" because defendant "does not have the requisite minimum contacts with Illinois courts." However, defendant offers no argument concerning the well-established reasonableness factors outlined above. See *Morgan, Lewis and Bockius LLP v. City of East Chicago*, 401 Ill. App. 3d 947, 956 (2010) (it is the moving party's "burden at this point to present a compelling case that an exercise of jurisdiction would be unreasonable"). The only factor that would seemingly weigh in defendant's favor is the purported burden of requiring it to litigate in Illinois. However, defendant "chose to enter into a business relationship with an Illinois [company] and continued that relationship across state lines," and has not argued how litigating in Illinois would be inconvenient. See *id.*

¶ 57　　　　Illinois has an interest in resolving the dispute, since one of its companies suffered allegedly $1.4 million from its use of defendant's products. Plaintiff also has an interest in obtaining convenient and effective relief in its home forum. Finally, defendant has not argued that adjudicating this case in Illinois "would be inefficient to the interstate judicial system." See *id.* Accordingly, defendant has not shown that subjecting it to litigation in Illinois is unreasonable. See, *e.g.*, *Russell*, 2013 IL 113909, ¶ 91 (subjecting French manufacturer to personal jurisdiction in Illinois was reasonable considering its "multiple sales *** made in Illinois over the past 10 years" and its business with an Illinois manufacturer); *Kothawala*, 2023 IL App (1st) 210972, ¶ 63 (requiring nonresident defendant to litigate in Illinois was reasonable where it "made extensive sales *** into Illinois, presumably reaping considerable profits" and, therefore, it "[could not] come as a surprise that litigation might follow in this forum, even if the particularities of how its product was used might be unforeseen").

¶ 58　　　　　　　　　　　　　　　B. *Forum Non Conveniens*

¶ 59       Defendant argues that the trial court abused its discretion in denying its motion to dismiss based on *forum non conveniens* because this is an "Iowa-centric" case. *Forum non conveniens* is an equitable doctrine founded in "considerations of fundamental fairness and the sensible and effective administration of justice" that "allows a trial court to decline jurisdiction when trial in another forum 'would better serve the ends of justice.' '' *Langenhorst v. Norfolk Southern Railway Co.*, 219 Ill. 2d 430, 441 (2006) (quoting *Vinson v. Allstate*, 144 Ill. 2d 306, 310 (1991)). The "*forum non conveniens* doctrine gives courts discretionary power that should be exercised *only in exceptional circumstances* \*\*\*." (Emphasis in original.) *Id.* at 442. Defendant, as the moving party, has the burden of proving that the "relevant factors 'strongly favor[ ]' dismissal for a more convenient forum" (*Koss Corp. v. Sachdeva*, 2012 IL App (1st) 120379, ¶ 100 (quoting *Langenhorst*, 219 Ill. 2d at 442)) and that an alternate forum "is more convenient to *all parties.*" ((Emphasis added.) *First American Bank v. Guerine*, 198 Ill. 2d 511, 518 (2002)).

¶ 60       The proper focus of interstate *forum non conveniens* is "whether the case is being litigated in the most appropriate state." *Fennell v. Illinois Central Railroad Co.*, 2012 IL 113812, ¶ 13. The appropriate remedy is dismissal, since Illinois courts lack the power to transfer the action to the court of another state. *Id.*

¶ 61       A trial court's ruling on a *forum non conveniens* motion is afforded "considerable discretion" and will not be reversed unless the defendant has shown that "the circuit court abused its discretion in balancing the relevant factors." *Langenhorst*, 219 Ill. 2d at 441-42. An abuse of discretion occurs only where "no reasonable person would take the view adopted by the circuit court." *Id.* at 442. The circuit court "must evaluate the total circumstances of the case in determining whether the defendant has proven that the balance of factors strongly favors [dismissal]." *Id.* at 444.

¶ 62                              1. Deference to Plaintiff's Chosen Forum

¶ 63          "A plaintiff's right to select the forum is substantial and unless the factors weigh

strongly in favor of [dismissal], the plaintiff's choice of forum should rarely be disturbed."

*Gridley v. State Farm Mutual Automobile Insurance Co.*, 217 Ill. 2d 158, 170 (2005). Defendant

asserts that plaintiff's choice of forum is only entitled to "minimal" deference because this is an

"Iowa-centric dispute." "[T]he plaintiff's interest in choosing the forum receives somewhat less

deference when neither the plaintiff's residence nor the site of the accident or injury is located in

the chosen forum." *Guerine*, 198 Ill. 2d at 517. Because plaintiff filed suit its home state, the

circuit court properly gave deference to plaintiff's choice of forum. See *Bradbury v. St. Mary's*

*Hospital of Kankakee*, 273 Ill. App. 3d 555, 560 (1995); see also *Fennell*, 2012 IL 113812, ¶ 18

(a plaintiff's home forum for an interstate *forum non conveniens* motion is their home state).

¶ 64                              2. Private Interest Factors

¶ 65          In determining whether *forum non conveniens* applies, the court "must balance the

private interest factors affecting the convenience of the litigants and public interest factors

affecting the administration of the courts." *Gridley*, 217 Ill. 2d at 169-70. The private interest

factors include: "(1) the convenience of the parties; (2) the relative ease of access to sources of

testimonial, documentary, and real evidence; and (3) all other practical problems that make trial

of a case easy, expeditious, and inexpensive," including the "ability to view the premises (if

appropriate)." *Guerine*, 198 Ill. 2d at 516.

¶ 66          Regarding the convenience of the parties, we assume that plaintiff's choice of its home

forum is convenient to plaintiff. *Dawdy v. Union Pacific Railroad Co.*, 207 Ill. 2d 167, 173

(2003). Defendant's witnesses maintain that Illinois is inconvenient merely because defendant

has "no facilities in Illinois." While Inhance is a Delaware company with its principal place of

business in Texas, defendant has not presented any evidence suggesting that Illinois is inconvenient, or that Iowa is a more convenient, to Inhance. Moreover, Inhance did not file a *forum non conveniens* motion. See *Guerine*, 198 Ill. 2d at 524 (noting that the other defendant "never filed a *forum non conveniens* motion"); see also *Ammerman v. Raymond Corp.*, 379 Ill. App. 3d 878, 889 (2008) (noting that the other defendant "did not object to [plaintiff's] choice of forum and did not file a motion to transfer"). As such, defendant has not shown that the convenience of the parties strongly favors dismissal.

¶ 67        Plaintiff maintains that "all of" its witnesses and "all of the production and corporate records related to the [c]ase, including documents and data related to the business relationship between the parties" are in Illinois. Whereas, defendant claims that its "witnesses to the transaction are largely located in Iowa, along with all the relevant documents and records." Accordingly, we agree with the circuit court that the relative ease of access to sources of testimonial, documentary, and real evidence "does not indicate strong favors for either forum."

¶ 68        All practical considerations that make trial easy, expeditious, and inexpensive favor Illinois.[6] While defendant and BASCO sold different containers to plaintiff, all containers were fluorinated by Inhance. The sale of those containers to plaintiff, the threat of action from USEPA, and the resulting economic injury from plaintiff's voluntary recall form the subject matter of the underlying claims. We therefore agree with the circuit court that requiring plaintiff and Inhance to litigate two separate trials concerning substantially overlapping issues would be an "inefficient and expensive use of judicial resources." Similarly, we reject defendant's argument that the circuit court abused its discretion in failing to sever the claims against itself

---

[6] Defendant argues that the "circuit court found that this factor favored Illinois because" the parties' attorneys are in Illinois. However, the record shows that the court properly afforded the location of the parties' attorneys "little weight." See *Dawdy*, 207 Ill. 2d at 179.

and BASCO, as defendant has not shown that severing the claims would aid convenience.[7] See

735 ILCS 5/2-1006 (West 2022) ("An action may be severed *** as an aid to convenience,

whenever it can be done without prejudice to a substantial right").

¶ 69     As defendant notes, it is the possibility, rather than the necessity, of a jury viewing the

site of the injury that is relevant. *Dawdy*, 207 Ill. 2d at 178. However, "the importance of this

factor diminishes" in a case involving a products liability claim "because jury views of the

accident site are not generally necessary in such cases." *Ammerman*, 379 Ill. App. 3d at 891; see

also *Quaid v. Baxter Healthcare Corp.*, 392 Ill. App. 3d 757, 772 (2009) (also finding that the

significance of this factor was diminished in a products liability case where it was "unlikely that

the jury would need to view the premises"). Nor would a jury view of defendant's Iowa premises

be relevant to plaintiff's claims for breach of implied warranty of merchantability, breach of

contract, or negligence. For these reasons, we find the possibility of a jury view to be relatively

unlikely in this case. See *Guerine*, 198 Ill. 2d at 525 (the court "fail[ed] to seed how a jury view

of the accident site will be necessary").

¶ 70     While choice-of-law issues should also be considered, they are not usually dispositive.

*Vivas v. Boeing Co.*, 392 Ill. App. 3d 644, 662 (2009). Defendant argues that Iowa law should

apply because "the local law of the 'place of the injury' is presumptively applicable in a product

liability case," and the "injury occurred in Iowa, when [it] allegedly sold containers

contaminated with PFAS." However, plaintiff suffered an economic injury in Illinois, not Iowa.

See *Knaus v. Guidry*, 389 Ill. App. 3d 804, 827 (2009) (plaintiffs suffered an economic injury

from alleged conspiracy in their "native states, not Illinois"). Defendant offers no argument

---

[7] Although defendant did not file a motion to sever in the circuit court, defendant did argue that the claims against itself and BASCO should be severed in its reply in support of its motion to dismiss. Moreover, a trial court "has authority to enter an order *sua sponte* under section 2-1006 to sever or consolidate cases ***." *Ad-Ex, Inc. v. City of Chicago*, 247 Ill. App. 3d 97, 103 (1993).

concerning the other choice-of-law factors, including, "the place where the conduct causing the injury occurred," the "domicile of the parties," and "the place where the relationship between the parties is centered." *Quaid*, 392 Ill. App. 3d at 774 (citing Restatement (Second) of Conflict of Laws § 145(2), at 414 (1971)). As such, defendant has not shown that Iowa law will apply to this case. And, regardless, "choice-of-law issues *** are not usually dispositive," since " '[a]n Illinois court is competent to determine which law applies to this controversy and to apply the law of [a foreign forum], if necessary.' " *Vivas*, 392 Ill. App. 3d at 662 (quoting *Woodward v. Bridgestone/Firestone, Inc.*, 368 Ill. App. 3d 827, 850 (2006)).

¶ 71                                3. Public Interest Factors

¶ 72        Public interest factors include: (1) the interest in deciding localized controversies locally; (2) the unfairness of imposing trial expense and the burden of jury duty on residents of a forum that has little connection to the litigation; and (3) the administrative difficulties of adding litigation to already congested court dockets. *Langenhorst*, 219 Ill. 2d at 443-444.

¶ 73        The first two public interest factors do not strongly favor Iowa. While Illinois has "an interest in resolving a controversy concerning the sale of an allegedly defective product by companies conducting business in its forum" (see *Ammerman*, 379 Ill. App. 3d at 892) and "an interest in an injury" to one of its businesses (see *Benedict By and Through Benedict v. Abbott Laboratories, Inc.*, 2018 IL App (1st) 180377, ¶ 62), Iowa also has "an interest in deciding whether a corporation, whose principal place of business *** [is there], sent forth a product" that caused an injury (*id.*). However, because "any local interest" of either state "is largely supplanted by a more general interest in resolving a claim concerning an allegedly defective product" and the widespread implications of exposing communities across the country to a harmful pollutant,

this controversy is no more "local" to Iowa than it is to Illinois. See *Ammerman*, 379 Ill. App. 3d at 886.

¶ 74     Moreover, litigating this case in Illinois would not impose the burden of jury duty on "residents of a community with *no relation to the litigation*." (Emphasis added.) See *Hinshaw v. Coachmen Industries, Inc.*, 319 Ill. App. 3d 269, 278 (2001). Illinois residents have a legitimate interest in this case, since an Illinois company sustained substantial economic losses from an allegedly defective product, and plaintiff's products were contaminated with a harmful pollutant and, according to plaintiff's Chief Financial Officer, "sold and delivered to customers in the State of Illinois and throughout the country." See *Cradle Society v. Adopt America Network*, 389 Ill. App. 3d 73, 78 (2009) (finding that it "would not be a burden on an Illinois jury to decide a controversy that involves one of its residents who was allegedly provided with inaccurate and incomplete information" and where the "economic impact of those alleged misrepresentations was felt in Illinois"); see also *Benedict*, 2018 IL App (1st) 180377, ¶ 62 (quoting *Vivas*, 392 Ill. App. 3d at 661) ("The residents of a forum 'have an interest in ensuring the safety of products that its corporations [produce] and ship throughout the world ***.' ").

¶ 75     Defendant challenges the circuit court's finding that it "should have provided more evidence of congestion." "Court congestion is a relatively insignificant factor, especially where the record does not show the other forum would resolve the case more quickly." *Guerine*, 198 Ill. 2d at 517. As defendant did not provide *any* evidence of Cook County's congestion below, the circuit court properly found that defendant failed to show that this factor strongly favored Iowa. See *Brummett v. Wepfer Marine, Inc.*, 111 Ill. 2d 495, 503 (1986) ("Courts should be extremely reluctant to dismiss a case *** merely because that forum's docket has a backlog; and this factor

is entitled to almost no weight without evidence to show that the court calendar in another forum would resolve the dispute more expeditiously.").

¶ 76    For the first time on appeal, defendant cites to the annual reports of the Administrative Office of the Illinois Courts and the Iowa Judicial Branch to show that Cook County is more congested than the Iowa district courts, which plaintiff does not contest. See *Dawdy*, 207 Ill. 2d at 181 (the annual report of the Administrative Office of the Illinois Courts is a "proper reference in assessing court congestion"). However, court congestion is "relatively insignificant" and "is not sufficient to justify transfer of venue when none of the other relevant factors weigh strongly in favor of transfer." *Id.* at 181. Since none of the other factors strongly favor dismissal, "court congestion alone is not dispositive of the forum issue in this case." *Erwin ex rel. Erwin v. Motorola, Inc.*, 408 Ill. App. 3d 261, 284 (2011).

¶ 77    Because the balance of private and public interest factors does not strongly favor Iowa, the circuit court did not abuse its discretion in denying defendant's motion to dismiss based on *forum non conveniens*.

¶ 78                                III. CONCLUSION

¶ 79    For the foregoing reasons, we affirm the circuit court's denial of defendant's motion to dismiss

¶ 80    Affirmed.